# Exhibit A

```
            UNITED STATES DISTRICT COURT
                     FOR THE
            WESTERN DISTRICT OF PENNSYLVANIA
```

SADRICK DONALDSON,
    Plaintiff

V.                                Civ. Action. No. 04-CV-257

UNITED STATES OF AMERICA
    Defendant.

```
        PLAINTIFF'S FIRST INTERROGATORIES DIRECTED TO
      DEFENDANT GARY BUCK, COUNSELOR, F.C.I. McKEAN
```

1. Please identify all positions and titles with corresponding dates of employment, that you have held as an employee at F.C.I McKean. Describe your job responsibilities for each position and title.

    Response: **Senior Officer** - Provided supervision care and correctional treatment of inmates and guidance to lower-grade Correctional Officers. Enforced rules and regulations governing facility security, inmate accountability and inmate conduct to insure judicial sanctions are carried out and inmates remain in custody.

    **Senior Officer Specialist** - Provided supervision care and correctional treatment of inmates and guidance to lower-grade Correctional Officers. Enforced rules and regulations governing facility security, inmate accountability and inmate conduct to insure judicial sanctions are carried out and inmates remain in custody.

    **Correctional Counselor** - Part of the unit intake process interviewing newly admitted inmates. Resolve day-to-day problems with on-the-spot counseling. Provide regularly scheduled meetings with inmates to provide assistance with problems while incarcerated. Provided individual and group counseling. Active member at the unit team classification meetings. Serve as a voting member of the Unit Disciplinary Committee. Monitor inmate work details and quarter assignments. Assists unit officer with the everyday running of the housing unit. Serve as a liaison on a day-to-day basis

Exhibit A page (1.)

(2)

>with other institution departments. Serve as the Inmate Financial Responsibility Coordinator. Coordinate any approvals/disapprovals to inmate visiting lists. Coordinate any approvals/disapprovals to inmates telephone lists.

2. Please describe in as much detail as possible the training you have received while working at F.C.I. McKean on the investigation on an inmate in protective custody, including, but not limited to a threat against them, and their safety.

> Response: I have not been trained in the investigation of inmates in protective custody. My role is to conduct interviews with the inmates concerns, then forward my interview to the unit manager and the Special Investigative Supervisor (SIS).

3. Please describe in as much detail as possible every policy, procedure, and practice that governs the inmate safety at F.C.I. McKean.

> Response: Inmates rights and responsibilities are found in the Institution Admission and Orientation handbook. This handbook is issued to each inmate upon their arrival at FCI McKean.

4. Please describe in as much detail as possible the complete circumstances surrounding the Plaintiff's protective custody investigation on November 2, 2002 until on or about December 19, 2002.

> Response: On November 12, 2002, unit staff received notification that inmate Donaldson requested placement in the special housing unit for protective custody reasons on November 12, 2002, at 2:00 AM. A protective custody interview was done in the special housing unit at FCI McKean, on November 12, 2002. Mr. Kindervater, Unit Manager, and myself conducted the interview. The results of the interview were forwarded to the SIS department to assist them in the investigation of the inmates request for protective custody.

Exhibit A page (2)



5. Please describe in as much detail as possible the incident report on Plaintiff - (Refusing program - 306) on 12-20-2002 at 9:50 a.m. as UDC Chairman. The Plaintiff's statement to committee. Plaintiff did not mention ERIC DRAYTON name in statement.
   Response: On December 20, 2002 myself and Tim Holt, Counselor, conducted a UDC hearing on inmate Donaldson for Refusing Programs code 306. Inmate Donaldson's statement to the UDC was, "I don't want to go back to the compound because of the DC inmates pressuring me for sex. This incident report was forwarded to the DHO for further disposition. The UDC made the following recommendations should inmate Donaldson be found guilty of the prohibited act, 15 days disciplinary segregation and loss of 7 days good conduct time.

6. Please identify and describe in as much detail as possible the inmates in B-B comments and complaints, relevant to inmates coming to Unit B-B harassing Plaintiff.
   Response: As I recall, several inmates approached me with concerns of other inmates (not assigned to unit BB) entering the unit to visit with inmate Donaldson on the evening watch shift. I can not recall these inmates, or their exact comments and complaints. Once I was made aware that other inmates not assigned to unit BB were entering the unit, I immediately notified the evening watch officers to pay closer attention to who entered the unit during the activity moves.

7. Please describe in as much detail as possible, did you notify any staff on inmates coming to Unit B-B harassing Plaintiff after plaintiff was released from Special Housing Unit on or about February 2, 2002, till March 29, 2003?
   Response: Upon inmate Donaldson's release from the special housing unit on February 12, 2003, a memorandum was posted in the officers office requesting that unit staff and the housing unit officers closely monitor inmate movement into the unit to prevent inmates from other units from entering unit BB.

3

Exhibit H page (3)

4.

8. Please describe in as much detail as possible, afer Plaintiff was released from Special Housing Unit, on or about February 1, 2002 until March 29, 2003, did you see any documents regarding inmate ERIC DRAYTON not to be permitted in the Unit B-B in the Officers' Station?

   Response: Upon inmate Donaldson's release from the special housing unit on February 12, 2003, a memorandum was posted in the officers office requesting that unit staff and the housing unit officers closely monitor inmate movement into the unit to prevent inmates from other units from entering unit BB. There was also a picture of inmate Drayton put on the memorandum.

9. Please describe in as much detail as possible, about the conversation you, Plaintiff, and William Bell had "about inmates coming to Unit B-B.

   Response: I remember having a conversation with inmate Bell, to the best of my knowledge it had something to do with him wanting to move out of the cell he shared with inmate Donaldson. I believe it was because inmate Donaldson had frequent visitors coming into his cell.

10. Please state name, affiliation, title, last known address and last name of each person who had knowledge of Plaintiff in protective custody on November 1, 2002.

    Response: -Gary Buck, Correctional Counselor - FCI McKean
    -Rodney Moore, Case Manager - FCI McKean
    -Charles Kindervater, Case Management Coordinator - FCI McKean
    -Mark Chiodo, SIS, LT. - FCI McKean
    -Donald Reich, Captain - FCI McKean
    -Cindy Billisits, AW(P) - FCI McKean

I declare that any and all records attached to this declaration are true and accurate copies maintained in the ordinary course of business by the Federal Bureau of Prisons. I further declare that the foregoing is true and correct to the best of my knowledge and belief, and is given under penalty of perjury pursuant to 28 U.S.C. §1746.

_____          4/15/05
Gary Buck                           Date

Counselor
FCI McKean

4

Exhibit A page (4)