## ADMINISTRATIVE REMEDY INFORMAL RESOLUTION WORKSHEET

PART 1 Notice to inmate:      Be advised that before filing a Request for Administrative Remedy Form BP-9, you **MUST** attempt to informally resolve your complaint through your Correctional Counselor. Briefly state complaint below, stating names of staff contacted.

This Informal Resolution was issued by Correctional Counselor, G. Buck on ____10/3/03____
And returned to the counselor on ____10/16/03____ .

Inmate Name: Sedrick Donaldson      Reg. No.: 20103-018   Unit: B-B

1. Complaint: I went in Protective Custody in 11-12-02, And was order back to the compound. On 8-29-03 the same inmate I was in protective custody against threw chemicals into my face. And the institution put my life in danger. By ordering me back to the compound, I After I told them I feared for my life The S.I.S. failure to investigate in an instotinal manner,

2.      Specific relief desired: I would like a transfer to a lower security institution. And want the S.I.S. to be investigated for putting my life in danger. I also want to file charges against ERIC DRAYTON for assolt.

3. Efforts made to informally resolve and staff contacted: S,I,S. I don't no the name of the officer who investigated.

_____      2010 2 - 018
Inmate's Signature                                   Inmate's Reg. No.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PART 2 Correctional Counselors Comments:

1. Efforts to informally resolve and names of staff contacted: See attached

Date Informally Resolved or BP-229 Issued (circle one): ____11/6/03____

_____
Counselors Signature

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DISTRIBUTION:      If complaint is NOT informally resolved, forward original attached to
                   BP-229 form to Warden (Attn: Warden's Secretary) thru your unit team.

D616

DONALDSON, Sadrick
Reg. No.: 20102-018
MCK 316972-F1

_____

## Part B - Response

This is in response to your Request for Administrative Remedy receipted in my office on November 14, 2003, regarding you being ordered out of the special housing unit and back into the general population on August 29, 2003.

You were held in the special housing unit under unverified protective custody from November 12 until December 19, 2002. During this time frame neither the SIS department nor your unit team were able to verify the purpose for holding you in the special housing unit for protective custody reasons. You were ordered to return to the general population on December 19, 2002, and you refused to do so. It is standard policy that any inmate who we are unable to verify in a reasonable amount of time will be ordered to return to general population. When you initially entered the special housing unit, you stated you feared for your life from another inmate. On December 2, 2002, you were interviewed again and you stated you did not feel inmate Drayton would hurt you. By making this statement it was concluded you no longer met the requirements needed to remain under protective custody. You were released from segregation and returned to general population with this individual on February 12, 2003, and remained on the compound with him until August 29, 2003, without incident.

On August 29, 2003, at approximately 12:45 p.m., you were assaulted by another inmate. On September 20, 2003, the SIS lieutenant interviewed you regarding this incident. You stated you had very little interaction with Drayton since returning to the compound but he again began harassing you. You then talked to Drayton about this and believed he must have become angry because of the fact that you declined his sexual offers. You did not report to staff you were being harassed or having any such problems since being released from the special housing unit on February 12, 2003.

Based on the above information, your Request for Administrative Remedy is denied.

In the event you are not satisfied with this response, you may appeal within twenty (20) days from the date of this response by submitting a form BP-DIR-230 to the regional director.

_12/24/03_
Date

John J. LaManna, Warden

D615

**Administrative Remedy No. 316972-A2**
**Part B - Response**

You contend you were placed in danger when you were not kept from another inmate who you felt was a threat. You seek a "compensatory award."

Our review of this matter reveals that both the Warden and the Regional Director have adequately addressed your concerns. You were placed in the Special Housing Unit (SHU) on November 12, 2002, as an unverified protection case. Staff investigated your statements that you felt threatened by another inmate but could not verify the need for protection. You were interviewed again by staff on December 2, 2002, and informed staff you did not feel that the other inmate would harm you. Your unverified protection case status ceased on December 19, 2002, and you were released to the general population on February 12, 2003.

You remained in general population until August 29, 2003, when you were assaulted. You made no statement to staff subsequent to December 2, 2002, that you once again felt threatened by the inmate. Therefore, staff remained under the impression you gave them on December 2, 2002, that you did not feel the other inmate would harm you. There is no evidence, therefore, that staff failed to protect you from any inmate. You offer no credible evidence to support any conclusion to the contrary.

Monetary compensation is not available via the Administrative Remedy process. You must submit a claim pursuant to the appropriate mechanism, such as the Federal Tort Claims Act, if you seek monetary compensation.

Your appeal is denied.

_July 28, 2004_
Date

Harrell Watts, Administrator
National Inmate Appeals

*(handwritten margin notes:)* I signed a statement with S.I.S. t. for Eric Drayton q Also Unit team

*(handwritten:)* 17.

# Informal Resolution Response

NAME: Donaldson, Sadrick
REG NO.  20102-018

In your request for "Informal Resolution", you stated that on November 11, 2002 you checked yourself into the special housing unit for protective custody.  You later received an order to return to general population and on August 29, 2003 the same inmate you requested protective custody from assaulted you.  You continued to say that the institution put your life in danger because of their failure to investigate this matter.

I have investigated your complaint  and obtained the following information.  An investigation was completed on December 2, 2002 in regards to your protective custody case.  The investigation was conducted by your unit team and the S.I.S. department.  During your interview with your unit team you made they statement "I don't feel that inmate Drayton would hurt me."  The conclusion of the investigation stated that your situation was not considered to be a verified protective custody case and consequently you were given a order to return to general population.

On January 29, 2003 the Disciplinary Hearing Officer found you guilty of code 307, Refusing to Obey an Order. The order was to return to general population. After reviewing the incident report it was revealed the statement you made to your unit disciplinary committee was not that you were in fear of your life from inmate Drayton, but that you did not want to return to general population because of the DC inmates on the compound pressuring you for sex.

Although the institutions investigation determined there was not a threat for your safety at that time, if you still felt strongly that there was a serious threat to your safety, you had the option to remain in the special housing unit.

If you feel that this response does not address your concerns, you may request a BP-229(13) Request For Administrative Remedy form from your unit team.

G. Buck, Correctional Counselor

November 5, 2003
Date

D617

DONALDSON, Sedrick
Reg. No. 316972-R3
Appeal No. 20102-018
Page One

---

### Part B - Response

In your appeal, you claim you were ordered out of the Special Housing Unit by staff at FCI Allenwood and when you were released to the compound, you were assaulted by an inmate.  You are requesting the SIS Department be investigated for putting your life in danger.  You are also requesting to file assault charges against the inmate who assaulted you.

A review of your appeal, indicates that an investigation was conducted concerning your request for protective custody.  The investigation concluded that there was no existence of a threat to your safety at FCI Allenwood and you refused to cooperate with the investigator on what was the specific threat to your safety. You were released from the Special Housing Unit on February 12, 2003, and your incident with the inmate that assaulted you did not take place until August 29, 2003.  An investigation was conducted on the inmate that assaulted you and he was sanctioned by the DHO.  Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons.  Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

Date: March 25, 2004

D. SCOTT DODRILL
Regional Director

D026



Copy

UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

SADRICK DONALDSON,
        Plaintiff

        V.                          Civ. Action. No. 04-CV-257


UNITED STATES OF AMERICA
        Defendant.


PLAINTIFF'S FIRST INTERROGATORIES DIRECTED TO
DEFENDANT GARY BUCK, COUNSELOR, F.C.I. McKEAN


1.  Please identify all positions and titles with corresponding
dates of employment, that you have held as an employee at F.C.I
McKean.  Describe your job responsibilities for each position and
title.
        Response: **Senior Officer** - Provided supervision care and
                correctional treatment of inmates and guidance to
                lower-grade Correctional Officers.  Enforced rules
                and regulations governing facility security, inmate
                accountability and inmate conduct to insure
                judicial sanctions are carried out and inmates
                remain in custody.

                **Senior Officer Specialist** - Provided supervision
                care and correctional treatment of inmates and
                guidance to lower-grade Correctional Officers.
                Enforced rules and regulations governing facility
                security, inmate accountability and inmate conduct
                to insure judicial sanctions are carried out and
                inmates remain in custody.

                **Correctional Counselor** - Part of the unit intake
                process interviewing newly admitted inmates.
                Resolve day-to-day problems with on-the-spot
                counseling.  Provide regularly scheduled meetings
                with inmates to provide assistance with problems
                while incarcerated.  Provided individual and group
                counseling.  Active member at the unit team
                classification meetings.  Serve as a voting member
                of the Unit Disciplinary Committee.  Monitor inmate
                work details and quarter assignments.  Assists unit
                officer with the everyday running of the housing
                unit.  Serve as a liaison on a day-to-day basis

Exhibit A page (1.)



with other institution departments.  Serve as the
Inmate Financial Responsibility Coordinator.
Coordinate any approvals/disapprovals to inmate
visiting lists.  Coordinate any
approvals/disapprovals to inmates telephone lists.


2.  Please describe in as much detail as possible the training you
have received while working at F.C.I. McKean on the investigation
on an inmate in protective custody, including, but not limited to
a threat against them, and their safety.
        Response: I have not been trained in the investigation of
                  inmates in protective custody.  My role is to
                  conduct interviews with the inmates concerns, then
                  forward my interview to the unit manager and the
                  Special Investigative Supervisor (SIS).


3.  Please describe in as much detail as possible every policy,
procedure, and practice that governs the inmate safety at F.C.I.
McKean.
        Response: Inmates rights and responsibilities are found in
                  the Institution Admission and Orientation handbook.
                  This handbook is issued to each inmate upon their
                  arrival at FCI McKean.


4.  Please describe in as much detail as possible the complete
circumstances surrounding the Plaintiff's protective custody
investigation on November 2, 2002 until on or about December 19,
2002.
        Response: On November 12, 2002, unit staff received
                  notification that inmate Donaldson requested
                  placement in the special housing unit for
                  protective custody reasons on November 12, 2002, at
                  2:00 AM.  A protective custody interview was done
                  in the special housing unit at FCI McKean, on
                  November 12, 2002.  Mr. Kindervater, Unit Manager,
                  and myself conducted the interview. The results of
                  the interview were forwarded to the SIS department
                  to assist them in the investigation of the inmates
                  request for protective custody.

2

Exhibit  A  Page  (2)



5.  Please describe in as much detail as possible the incident report on Plaintiff - (Refusing program - 306) on 12-20-2002 at 9:50 a.m. as UDC Chairman.  The Plaintiff's statement to committee.  Plaintiff did not mention ERIC DRAYTON name in statement.

    Response: On December 20, 2002 myself and Tim Holt, Counselor, conducted a UDC hearing on inmate Donaldson for Refusing Programs code 306.  Inmate Donaldson's statement to the UDC was, "I don't want to go back to the compound because of the DC inmates pressuring me for sex.  This incident report was forwarded to the DHO for further disposition.  The UDC made the following recommendations should inmate Donaldson be found guilty of the prohibited act, 15 days disciplinary segregation and loss of 7 days good conduct time.

6.  Please identify and describe in as much detail as possible the inmates in B-B comments and complaints, relevant to inmates coming to Unit B-B harassing Plaintiff.

    Response: As I recall, several inmates approached me with concerns of other inmates (not assigned to unit BB) entering the unit to visit with inmate Donaldson on the evening watch shift. I can not recall these inmates, or their exact comments and complaints. Once I was made aware that other inmates not assigned to unit BB were entering the unit, I immediately notified the evening watch officers to pay closer attention to who entered the unit during the activity moves.

7.  Please describe in as much detail as possible, did you notify any staff on inmates coming to Unit B-B harassing Plaintiff after plaintiff was released from Special Housing Unit on or about February 2, 2002, till March 29, 2003?

    Response: Upon inmate Donaldson's release from the special housing unit on February 12, 2003, a memorandum was posted in the officers office requesting that unit staff and the housing unit officers closely monitor inmate movement into the unit to prevent inmates from other units from entering unit BB.

Exhibit A page (2)

(4.)

8. Please describe in as much detail as possible, afer Plaintiff was released from Special Housing Unit, on or about February 1, 2002 until March 29, 2003, did you see any documents regarding inmate ERIC DRAYTON not to be permitted in the Unit B-B in the Officers' Station?

Response: Upon inmate Donaldson's release from the special housing unit on February 12, 2003, a memorandum was posted in the officers office requesting that unit staff and the housing unit officers closely monitor inmate movement into the unit to prevent inmates from other units from entering unit BB. There was also a picture of inmate Drayton put on the memorandum.

9. Please describe in as much detail as possible, about the conversation you, Plaintiff, and William Bell had "about inmates coming to Unit B-B.

Response: I remember having a conversation with inmate Bell, to the best of my knowledge it had something to do with him wanting to move out of the cell he shared with inmate Donaldson. I believe it was because inmate Donaldson had frequent visitors coming into his cell.

10. Please state name, affiliation, title, last known address and last name of each person who had knowledge of Plaintiff in protective custody on November 1, 2002.

Response: -Gary Buck, Correctional Counselor - FCI McKean
-Rodney Moore, Case Manager - FCI McKean
-Charles Kindervater, Case Management Coordinator - FCI McKean
-Mark Chiodo, SIS, LT. - FCI McKean
-Donald Reich, Captain - FCI McKean
-Cindy Billisits, AW(P) - FCI McKean

I declare that any and all records attached to this declaration are true and accurate copies maintained in the ordinary course of business by the Federal Bureau of Prisons. I further declare that the foregoing is true and correct to the best of my knowledge and belief, and is given under penalty of perjury pursuant to 28 U.S.C. §1746.

Gary Buck                          4/15/05
_____                    _____
Gary Buck                          Date

Counselor
FCI McKean

4

SEP-24-2004 FRI 02:29 PM FCI Allenwood    (1.)    FAX NO. 570 547 7751    P. 03

BP-8.052 INCIDENT REPORT CDFRM
JULY 1994
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

---

| 1. Name Of Institution: Federal Correctional Institution McKean Part I - Incident Report | | | | *1057705* |
|---|---|---|---|---|

| 2. Name Of Inmate DONALDSON, SADRICK | 3. Register Number 20102-018 | 4. Date Of Incident 12-19-02 | 5. Time 1:15PM |
|---|---|---|---|

| 6. Place Of Incident Special Housing Unit CELL | 7. Assignment SHU UNASSGN | 8. Unit SHU (BB) |
|---|---|---|

| 9. Incident    REFUSING PROGRAMS          CODE:306 |
|---|

11. Description Of Incident (Date:12-19-02 Time 1:15PM Staff become aware of incident)
   ON 12-19-02 AT APPROXIMATELY 1:15PM, I STATED TO INMATE DONALDSON TO PACK HIS PROPERTY BECAUSE IS WAS RETURN TO GENERAL POPULATION. INMATE DONALDSON STATED HE WAS NOT RETURNING TO THE COMPOUND.

| 12. Signature Of Reporting Employee | Date And Time 12-19-02 1:45PM | 13. Name And Title (Printed) DONALD NERO, SENIOR OFFICER |
|---|---|---|

| 14. Incident Report Delivered To Above Inmate By | 15. Date Incident Report Delivered 12-19-02 | 16. time Incident Report Delivered 6:25 pm |
|---|---|---|

### Part II - Committee Action

17. Comments Of Inmate To Committee Regarding Above Incident

Inmate Donaldson said that he won't go back to the compound because of DC inmates pressurin him for sex.

18. A. It Is The Finding Of The Committee That You: _____ Committed The Following Prohibited Act.

_____ Did Not Commit A Prohibited Act.

B. **XXXXX** The Committee Is Referring The Charge(s) To The DHO For Further Hearing.
C. _____ The Committee Advised The Inmate Of Its Finding And Of The Right To File An Appeal Within 15 Calendar Days.

19. Committee Decision Is Based On The Following Information
If inmate is found to have committed the prohibited act, greater sanctions should be considered than are available at the UDC level.

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act)
15 days D/S, loss of 7 days GCT

21. Date And Time Of Action 12-20-2002  9:50 am    (The UDC Chairman's Signature Next To His Name Certifies Who Sat On The UDC And That The Completed Report Accurately Reflects The UDC Proceedings.)

22. Buck _____    T Holt _____    _____
Chairman (Typed Name/Signature)    Member (Typed Name)    Member (Typed Name)

Record Copy - Central File Record;  Copy - DHO;  Copy - Inmate After UDC Action; Give Inmate Within 24 Hours Of Part I Preparation
(This Form May Be Replicated Via WP)                    Replaces BP-288(52) OF Jan

Exhibit ( R )    D038

SEP-24-2004 FRI 02:29 PM FCI Allenwood ②          FAX NO. 570 547 7751          P. 04

| Part III - Investigation | 22. Date And Time Investigation Began<br>12-19-2002 6:25PM |
|---|---|

23. Inmate Advised Of Right To Remain Silent: You Are Advised Of Your Right To Remain Silent At All Stages Of The Disciplinary Process But Are Informed That Your Silence May Be Used To Draw An Adverse Inference Against You At Any Stage Of The Institutional Disciplinary Process. You Are Also Informed That Your Silence Alone May Not Be Used To Support A Finding That You Have Committed A Prohibited Act.

The Inmate Was Advised Of The Above Right By R. POITRAS, Lt. At (Date/time) 12-19-02 6:25PM

24. Inmate Statement And Attitude

INMATE DONALDSON, SADRICK #20102-018, WAS IDENTIFIED, GIVEN A COPY OF THIS REPORT, AND ADVISED OF HIS RIGHTS AND SAID HE UNDERSTOOD THEM. ACKNOWLEDGING THIS THE INMATE STATED: " I'M CONCERNED FOR MY SAFETY, STILL." INMATE DONALDSON DISPLAYED A FAIR ATTITUDE DURING THIS INVESTIGATION.

25. Other Facts About The Incident, Statements Of Those Persons Present At Scene, Disposition Of Evidence, Etc.

INMATE DONALDSON DID NOT REQUEST FOR ANY WITNESSES. ALL FACTS ARE CONTAINED IN THE BODY OF THIS REPORT

26. Investigator's Comments And Conclusions

BASED ON THE REPORTING STAFF MEMBERS STATEMENT AS OUTLINED IN SECTION 11 OF THIS REPORT, I FIND THE CHARGE 306 TO BE SUPPORTED.

27. Action Taken

INMATE DONALDSON REMAINS IN PRESENT STATUS AND THIS MATTER IS REFERRED TO THE UDC FOR FURTHER PROCESSING.

Date And Time Investigation Completed 12-19-2002 7:00PM

Printed Name/signature Of Investigator ROBERT POITRAS

_____                    LIEUTENANT
        Signature                               Title

Exhibit R page (2)

SEP-24-2004 FRI 02:31 PM FCI Allenwood ③.    FAX NO. 570 547 7751    P. 08

U.S. Department of Justice

Federal Bureau of Prisons

Inmate Rights A    scipline Hearing

FCI McKean
Institution

As an inmate charged with a violation of Bureau rules or regulations referred to the Discipline Hearing Officer (DHO) for disposition, you have the following rights:

1. The right to have a written copy of the charge(s) against you at least 24 hours prior to appearing before the Discipline Hearing Officer;

2. The right to have a full-time member of the staff who is reasonably available to represent you before the Discipline Hearing Officer;

3. The right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence in your behalf, provided institutional safety would not be jeopardized;

4. The right to present a statement or to remain silent. Your silence may be used to draw an adverse inference against you. However, your silence alone may not be used to support a finding that you committed a prohibited act;

5. The right to be present throughout the discipline hearing except during a period of deliberation or when institutional safety would be jeopardized. If you elect not to appear before the DHO, you may still have witnesses and a staff representative appear on your behalf;

6. The right to be advised of the DHO's decision, the facts supporting that decision, except where institutional safety would be jeopardized, and the DHO's disposition in writing; and.

7. The right to appeal the decision of the DHO by means of the Administrative Remedy Procedure to the Regional Director within 20 calendar days of notice of the DHO's decision and disposition.

I hereby acknowledge that I have been advised of the above rights afforded me at a hearing before the Discipline Hearing Officer. I have further been advised that if I have previously received either a presumptive or effective parole date from the Parole Commission, a finding by the DHO that I committed the prohibited act(s) may result in a rescission or retardation by the Parole Commission of the presumptive or effective parole date.

Signed: _unable to sign in cuffs_    Reg. No. _20/02-018_ Date: _12/20/02_
Inmate Signature

Notice of rights given to inmate _12/20/02   9:50 Am_ by _G. Buck /_ _____
Date Time    Employee Printed Name Signature

Over

D042

Exhibit B page ③

U.S. Department of Justice                      Notice of Discipl      Hearing before
Federal Bureau of Prisons                       the Discipline F      ing Officer (DHO)

_____

                                                                    12/20/02
                                                                   _____
                                                                   Institution

                                                              DATE: 12/20/0_

TO: ___Donaldson, Sadrick___        Reg. No.: __20102-018__

ALLEGED VIOLATION(S): __Refusing Programs__

DATE OF OFFENSE: ____12/19/02____        Code No.: ___306___

You are being referred to the DHO for the above charge(s).

The hearing will be held on: __Next Available docket__ , at _____ (A.M./P.M.) at the following location

_____

You are entitled to have a full-time staff member represent you at the hearing.  Please indicate below whether you desire to have a sta
representative, and if so, his or her name.

I (do) ____ (do not) _✓_ wish to have a staff representative.

If so, the staff representative's name is: _____

You will also have the right to call witnesses at the hearing and to present documentary evidence in your behalf; provided, calling your
witnesses will not jeopardize institutional safety.  Names of witnesses you wish to call should be listed below.  Briefly state to what each
proposed witness would be able to testify.

I (do)____ (do not) _✓_ wish to have witnesses.

NAME: _____ , Can Testify to: _____

_____

NAME: _____ , Can Testify to: _____

_____

NAME: _____ , Can Testify to: _____

_____

The Discipline Hearing Officer will call those witnesses (Staff or Inmate) who are reasonably available, and who are determined by the D
to have information relevant to the charge(s).  Repetitive witnesses and repetitive character references need not be called.  Unavailable
witnesses may be asked to submit written statements.

If additional space is needed, use the reverse side of this form.  Date, sign, and return this form to the DHO.

DATE: _12/20/02_        SIGNATURE: _Unable to sign in Cuffs_
                                    9:50 AM
Notice of hearing before DHO given inmate _12/20/02_ by _C. Buck / L. Buck_
                                           Date/Time          Employee Printed Name/Signature

Exhibit B page (4)   D040

SEP-24-2004 FRI 02:31 PM FCI Allenwood  (5.)    FAX NO. 570 547 7751    P. 09

ate Rights At Discipline Hearing (cont'r)

_FCI Mckean_
Institution

(Where an inmate has been advised of the rights afforded at a hearing before the DHO, but refuses to sign the acknowledgement the following should be completed.)

I have personally advised (Inmate's Name/Register No.) _Donaldson, Sedrick  20102-018_
of the above rights afforded at a discipline hearing before the DHO; however the inmate has refused to sign the acknowledgement.

Signed: _____

Employee's Typed or Printed Name: _E. Buck_

Date: _12/20/02_

---

### Waiver of 24 Hour Notice

I have been advised that I have the right to have a written copy of the charge(s) against me at least 24 hours prior to appearing before the DHO. I wish to waive this right and proceed with the DHO hearing at this time.

Signed: _____

Typed or Printed Name: _____

Register Number: _____

Date: _____ Time: _____

Witnessed by: _____
(Employee Printed Name/Signature)

Exhibit B page (5)

D041

SEP-24-2004 FRI 02:30 PM FCI Allenwood          FAX NO. 570 547 7751          P. 05



DISCIPLINE HEARING OFFICER REPORT                          BP-S305.052 MAY 94
U.S. DEPARTMENT OF JUSTICE                          FEDERAL BUREAU OF PRISONS

| INSTITUTION | FCI McKean, Pennsylvania | INCIDENT REPORT NUMBER | | 1057705 |
|---|---|---|---|---|
| INMATE NAME | Donaldson, Sadrick | REG NO | 20102-018 | UNIT | B-B |
| DATE OF INCIDENT | 12-19-2002 | DATE OF INCIDENT REPORT | | 12-19-2002 |

| OFFENSE CODE(S) | 306 |
|---|---|
| SUMMARY OF CHARGES | Refusing to Accept a Program Assignment |

**I.   NOTICE OF CHARGE(S)**

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on (date) 12-19-2002 at 1825 (by staff member) R. Poitras, Lieutenant

B. The DHO Hearing was held on (date) 01-29-2003 at (time) 0825

C. The inmate was advised of his/her rights before the DHO by (staff member): G. Buck, Counselor on (date) 12-20-2002 and a copy of the advisement of rights form is attached.

**II.   STAFF REPRESENTATIVE**

| A. Inmate waived right to staff representative. | Yes: | XXX | No: | |
|---|---|---|---|---|

B. Inmate requested staff representative and N/A appeared.

C. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that:

N/A

| D. Staff representative | N/A | was appointed. |
|---|---|---|

E. Staff representative statement:

N/A

**III.   PRESENTATION OF EVIDENCE**

| A. Inmate admits | | denies | X | the charge(s). |
|---|---|---|---|---|

B. Summary of inmate statement:

I did refuse when they ordered me out, but I didn't know my investigation was completed. I was a P/C, and I checked in. I talked to one of the SIS Lieutenants on I believe a Wednesday. He told me he was going to see me that Friday. The next day, Officer Nero told me I had to go back to the compound, but the SIS told me he was going to see me on Friday. The UDC saw me on Friday. I told them the SIS told me he would see me on Friday. The UDC told me the SIS told them the investigation was completed. I told the UDC I was refusing to go back to the compound because the SIS told me he was coming back to see me. That's about it. They said the investigation was over with, and that was it, but they didn't tell me it was over with until after I got the shot.

C. Witness(es):

| A. The inmate requested witness(es). | Yes: | | No: | XXX |
|---|---|---|---|---|

B. The following persons were called as witnesses at this hearing and appeared. (Include each witnesses' name, title, reg number and statement as appropriate.)

N/A

Exhibit B page (6)          D043

SEP-24-2004 FRI 02:30 PM FCI Allenwood        FAX NO. 570 547 7751        P. 06

DISCIPLINE HEARING OFFICE   REPORT                    BP-S305.052 MAY 94
U.S. DEPARTMENT OF JUSTICE                           FEDERAL BUREAU OF PRISONS

| 3. The following persons requested were not called for the reason(s) given. | | | | | | |
|---|---|---|---|---|---|---|
| N/A | | | | | | |
| 4. Unavailable witnesses were requested to submit written statements and those statements received were considered. | Yes | | No | | N/A | X |

D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents:

The memorandum written by Charles Kindervater, Unit Manager, dated December 2, 2002.

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because:

N/A

IV. FINDINGS OF THE DHO

| X | A. The act(acts) was(were) committed as charged. |
|---|---|
| | B. The following act was committed: |
| | C. No prohibited act was committed: Expunge according to Inmate Discipline PS. |

V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.)

The written statement of Officer Nero documents on December 19, 2002, at approximately 1:15 p.m., he told you to pack your property because you were being released from the Special Housing Unit to the general inmate population. You stated you were not returning to the compound.

The memorandum written by Unit Manager Kindervater documents on November 12, 2002, you were placed in the Special Housing Unit after requesting protective custody. You were interviewed that same day by Counselor Buck and Unit Manager Kindervater in the Special Housing Unit. During the interview, you identified an inmate who you stated was "pressuring" you for a "relationship". You stated you were involved in a relationship with this inmate at another institution. The inmate wanted to continue the relationship with you, but you did not want to. The inmate had been coming to the unit and "pressuring" you in the evenings. You also stated three other inmates had approached you on the compound about a month ago for sex, but they did not assault you. The inmate you were in the prior relationship with tried to prevent you from talking to other inmates, and he would get very defensive toward other inmates who talked to you. You did not think the inmate would hurt you, but you believed he might hurt someone else if he saw someone talking to you. You stated you could not take it anymore, and you wanted to remain in the Special Housing Unit, or be transferred.

Other inmates were interviewed during Mr. Kindervater's investigation of your need to remain in the Special Housing Unit for protective custody. Mr. Kindervater concluded there was no evidence presented which would lead him to believe there is a threat to your safety. Mr. Kindervater recommended that you be released from the Special Housing Unit and returned to the general inmate population. The investigation completed by Mr. Kindervater was reviewed by SIS Lieutenant Chiodo, Captain Reich, and Associate Warden (Programs) Billisits, who concurred with the finding of Mr. Kindervater that you should be returned to the general inmate population.

You denied the charge and presented as your defense that when the reporting staff member asked you to return to the general inmate population, you did not know your investigation was completed. You requested to be placed in the Special Housing Unit and talked to one of the SIS Lieutenants. You believe you talked to the SIS Lieutenant the day before the reporting staff member wrote the incident report. The SIS Lieutenant told you he was going to see you two days later. The next day, the reporting staff member told you that you I had to go back to the compound, but the SIS Lieutenant

Exhibit B page (7)                    D044

SEP-24-2004 FRI 02:30 PM FCI Allenwood    FAX NO. 570 547 7751    P. 07

DISCIPLINE HEARING OFFICE  REPORT                       BP-S305.052 MAY 94
U.S. DEPARTMENT OF JUSTICE                         FEDERAL BUREAU OF PRISONS

---

told you he was going to see you the day after the reporting staff member told you that
you had to go back to the compound.  The UDC saw you the day after the incident report
was written.  You told them the SIS Lieutenant told you he would see you the next day.
The UDC told you the SIS Lieutenant told them the investigation was completed.  You told
the UDC you were refusing to go back to the compound because the SIS Lieutenant told you
he was coming back to see you.  The UDC told you the investigation was over with, and
that was it, but they didn't tell you it was over with until after you received the
incident report.

The DHO gave little weight to your defense because the DHO found your defense to have no
merit.  Although you contend you were not informed by staff that the investigation was
over with until after you received the incident report, you admitted the reporting staff
member did order you out of the Special Housing Unit, and you refused.  The memorandum
written by Unit Manager Kindervater documented your need to remain in the Special Housing
Unit could not be verified, and he recommended that you be placed back into the general
inmate population.  The report prepared by Mr. Kindervater was reviewed by SIS Lieutenant
Chiodo, Captain Reich, and Associate Warden (Programs) Billisits, who concurred with Mr.
Kindervater's recommendation.  You admitted when the reporting staff member ordered you
to return to the general inmate population, you refused.  You also stated when you
appeared before the UDC, they informed you the investigation was completed.  The record
documents you appeared before the UDC on December 20, 2002, at 9:50 a.m.  The UDC
documented you stated you would not go back to the compound.  You were instructed by the
reporting staff member on December 19, 2002, at approximately 1:15 p.m., to pack your
property in the Special Housing Unit because you were returning the general inmate
population.  When you were instructed to do so, you stated you were not returning to the
compound.  By refusing to return to the general inmate population, the DHO found you
committed the prohibited act of Refusing to Accept a Program Assignment, Code 306.

---

**VI.  SANCTION OR ACTION TAKEN**

Disallow Good Conduct Time:  Disallow 10 days GCT from Comp 010, PLRA, for 306.

---

**VII.  REASON FOR SANCTION OR ACTION TAKEN**

Refusing to accept a program assignment seriously disrupts the security and orderly
running of the institution.  By refusing to return to the general inmate population after
being ordered to do so, your behavior demeans staff's authority, and it hampers staff's
ability to provide inmates with meaningful program assignments.  This type of inmate
behavior cannot be tolerated, because to do so would lessen staff's ability to
effectively manage the inmate population.  The sanction was imposed to punish you for
your misconduct, to place a significant impact on your future, and to deter this type of
inmate behavior within a correctional institution.

---

**VIII.  APPEAL RIGHTS:** The inmate has been advised of the findings, specific evidence
relied on, action and reasons for the action.  The inmate has been advised of his right
to appeal this action within 20 calendar days under the Administrative Remedy Procedure.
A copy of this report has been given to the inmate.

|  | Yes | X | No |  |  |
|---|---|---|---|---|---|

**IX.  DISCIPLINE HEARING OFFICER**

| Printed Name of DHO | Signature of DHO | Date |
|---|---|---|
| James P. Linden | *[signature]* | January 29, 2003 |
| Report delivered to inmate by: | DATE | |
| *[signature]* | 01-29-03 | |

[This form may be replicated in WP]                    Replaces BP-404(52) of JUN

U.S. DEPARTMENT OF JUSTICE      INMATE INJURY ASSESSMENT AND FOLLOWUP

Federal Bureau of Prisons    *(Medical)*

| 1. Institution  F C I  McKean | 2. Name of Injured  Donaldson Sidrick | 3. Register Number  20102-018 |
|---|---|---|
| 4. Injured's Duty Assignment  Unit orderly | 5. Housing Assignment  BB | 6. Date and Time of Injury  8/29/03 1300 |

| 7. Where Did Injury Happen (*Be specific as to location*)  Classroom Education | Work Related?  ☐ Yes  ☐ No | 8. Date and Time Reported for Treatment  8/29/03  1325 |
|---|---|---|

**9. Subjective:** (*Injured's Statement as to How Injury Occurred*)(*Symptoms as Reported by Patient*)

"I was sitting on my chair when inmate ▓▓▓▓▓ threw a hot fluid in my face"

Pain 10 on 1-10 scale x unable to sign

*Signature of Patient*

**10. Objective:** (*Observations or Findings from Examination*)    X-Rays Taken ____    Not Indicated ✗

X-Ray Results

2° burn nose & face

both shoulders 1° burn

eyes very red, irritated, tearing

**11. Assessment:** (*Analysis of Facts Based on Subjective and Objective Data*)

1° & 2° burns

**12. Plan:** (*Diagnostic Procedures with Results, Treatment and Recommended Follow-up*)

1) Eyes, face rinsed c̄ cold H₂O
2) Wood's lamp exam done
3) Silvadine to areas  4) To Hospital

**13. This Injury Required:**

☐ a. No Medical Attention

☑ b. Minor First Aid

☐ c. Hospitalization

☐ d. Other (explain)

To Hospital

Exhibit C   page (1)

BRADFORD REGIONAL MEDICAL CENTER          (2)          BRADFORD NURSING PAVILION

| DATE | Note progress of case, complication, consultations, change in diagnosis, condition on discharge, instructions to patient |
|---|---|
| 8/29/3 4:45pm | **Ophthalmology** <br><br> Hx 26y/o prisoner splashed in face + eyes with a mixture of muslin oil, pepper, + oven cleaner - left eye got more of material in it. Prisoner flushed eyes [at prison - told by staff] c̄ flushing. Morgan lens used to irrigate both eyes - Pt states eyes are more comfortable since morgan lens - Vision blurred left eye more so than Right. No previous problems with vision. Normal acuity 20/40 as <br><br> meds Ø      Allergies NKDA <br> POcHx Ø <br><br> Exam  distance <br> VA { 20/100   R 4 ⊖ APD    C̄/F F̄/b/a <br>        20/200      4 <br><br> Eom full        IT 8.0 (R)    Ept burns to nose <br>            pH { 8.0 (L)    & cheeks <br><br> Slit lamp <br> Lids - normal    Conj 2° injection   Cornea <br> Ant Chamber - Normal         OD        OS <br> lens clear |

OD/OS circle diagrams with annotations: "superficial keratitis", "2 defects", "⊖ infiltrates"

A/P Chemical Keratitis (OS) OD
F/C Erythro ophth. oint
to OU Q4° until defect
sealed & f/u polymox/? ē 48°
burns may consider topical steroid
f/u at FCI McKean c̄ Dr Reaum.
Call if f/u/vision eval needed

_____ MD
_____

Exhibit C      Page (2)   D047

③

**BRADFORD REGIONAL MEDICAL CENTER**

**EMERGENCY DEPARTMENT**
**TRIAGE ASSESSMENT**
**PHYSICIAN ORDERS**

SIGN IN TIME: 1510    TIME INTO ED: 1515
TRIAGE TIME: 1510    RM # 7E

| DATE: 7/9/0_ | LAST NAME: Donaldson | FIRST NAME: Sedrick | AGE: 26 | DOB: 3/39/77 |
|---|---|---|---|---|

CC: Chemical burns to face and ___

TRIAGE LEVEL: I ☐ II ☐ (III) ☐    ED MD

TRIAGE NOTE: eyes - mixture of muslin oil & pepper + oven cleaner

TRIAGE NURSE SIGN

ARRIVED VIA: ☐ WALK ☐ WC ☐ STRETCHER ☐ CARRIED ☐ AMBULANCE ☐ BLS ☐ ALS    SERVICE    ☐ NURSING HOME

ATTENDING MD    SERVICE PCP

PRG ☐ Y ☐ N    LMP: N/A    ☐ HYST ☐ PM    LAST TETANUS: p/k    PRE HOSPITAL CARE ☐ NONE ☐ C SPINE IMMOBILIZED ☐ O₂ @ _____    ☐ IV

PMH:    @ prison

| CURRENT MEDICATIONS ☐ NONE ☐ USE OF HERBS | ALLERGIES | VITAL SIGNS | TIME | T ___ Oral/Rectal ___ | P 76 | R 16 | BP 138/8_ |
|---|---|---|---|---|---|---|---|
| ☐ PNEUMOCOCCAL VACCINE ☐ FLU SHOT | ☐ FOOD ☐ LATEX | | TIME | T ___ PO/Tym/Rectal | P | R | BP |
| | NKDA | | TIME | SpO₂ | | TIME | SpO₂ | Wt. |

more

**PAIN**
☐ Denies:    Scale:    Location:
Onset:    Radiates to:
Type: ☐ Constant ☐ Variable ☐ Intermittent
Quality: ☐ Sharp ☐ Dull ☐ Ache ☐ Throbbing
☐ Heavy ☐ Tightness ☐ Cramping ☐ Pressure

**D.V. SCREEN**
☐ Are you living in a situation where you feel you are afraid or abused ☐ Y ☐ N
☐ Referal Made To:

**ADVANCED DIRECTIVES - Y - N**
Visual Acuity
☐ With Lenses ☐ Without Lenses
20/20 OS 20/20 OD    20/70 OU

**NURSING ASSESSMENT**

TIME:    ☐ RESTRAINTS TYPE:

☐ CARDIAC MONITORING ☐ CONTINUOUS PULSE OXIMETRY ☐ ICE APPLIED ☐ GLUCOMETER

☐ WOUND/BURN CARE ☐ CRUTCH TRAINING ☐ WORK/SCHOOL EXCUSE ☐ DRESSING

(1/0) 1st & 2nd° burn face and
shoulders - irritation & burning of
eyes - eyes were flushed at the prison ___
silvadene cream applied to burn ___
___ pt states ___
mixture + possibly oven
cleaner thrown to face ___ 1300
was ___ N-P ___ to the prison
pt states his ___ vision is
normally decreased vision ___

**ORTHO**

| TIME | o— | ? | ? |
|---|---|---|---|
| | | | |

**HIPAA Information**
Released ☐ Y ☐ N
☐ CALL BELL ☐ N/A
☐ SIDE RAILS UP ☐ N/A

**VALUABLES**
☐ NONE ☐ GLASSES ☐ HEARING AID
☐ JEWELRY ☐ DENTURES ☐ CLOTHING
☑ CONTACTS ☐ OTHER

**LABORATORY**
☐ CBC c̄ diff    ☐ UA ☐ C&S ☐ Cath/Clean catch
☐ BMP ☐ CMP    ☐ THROAT CS
☐ PT/PTT/INR    ☐ GC / CHLAMYDIA
☐ AMY ☐ LIP    ☐ STREP
☐ CK ☐ TROP    ☐ RAPID ☐ C&S
☐ ABG    ☐ SPUTUM
☐ BHCG ☐    ☐ GS ☐ C&S
☐ CCU PROFILE    ☐ WOUND
☐ HEPATIC PRO    ☐ AEROB / ANAEROBIC
☐ DRUG SCREEN    ☐ EKG
☐ TRAUMA PRO    ☐ MONITOR
☐ T & S    ☐ SpO₂
☐ T & C ___ units    ☐ CANNULA ☐ MASKING

| # | SOLUTION / MED | AMT | ROUTE/SITE | TIME | SIGNATURE |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

| | | □ ASA   □ APAP | □ CXR   □ PA & LAT |
| | | □ TEGRETOL | □ C-SPINE |
| | | □ OTHER | □ SURG ABD |
| DISPOSITION: OBSERVATION □ ADMIT   □ BED # _____ | □ HOME BY   PT. RECEIVED WRITTEN INSTRUCTIONS | □ | □ KUB |
| TRANSFERRED TO: | □ OLD RECORD TO FLOOR | □ | □ US _____ |
| RECEIVING MD: | REFERRING MD: | □ | □ CT |
| REPORT TO: | TIME OUT | ACCOMPANIED BY | □ | □ CONTRAST   □ WITHOU |
| DISCHARGE NURSE SIGNATURE: | | □ | □ RESP. TMT BY NURSE |
| CONDITION: □ STABLE  ☑ IMPROVED  □ NO CHANGE  □ CRITICAL  □ EXPIRED  □ DOA | | | |

**164**

| DIAGNOSIS: | |
| □ T-SHEET   □ DICTATED | |
| MD / CRNP SIGNATURE: | |

Exhibit c   page (b.)

**BRADFORD REGIONAL MEDICAL CENTER**

BRADFORD, PENNSYLVANIA

RECORD OF TETANUS & DIPTHERIA TOXOID BOOSTER

NAME _Gerard Donaldson_

RECEIVED A TETANUS & DIPTHERIA TOXOID BOOSTER ON

_5/29/03_
DATE

*This card is an important part of your medical history—*
*Please carry it with you.*

6780-005   2/95

# VACCINES

## NEED TO KNOW

---

## 1 │ Why get vaccinated?

**Diphtheria, tetanus, and pertussis** are serious diseases caused by bacteria. Diphtheria and pertussis are spread from person to person. Tetanus enters the body through cuts or wounds.

**DIPHTHERIA** causes a thick covering in the back of the throat.
○ It can lead to breathing problems, paralysis, heart failure, and even death.

**TETANUS (Lockjaw)** causes painful tightening of the muscles, usually all over the body.
○ It can lead to "locking" of the jaw so the victim cannot open his mouth or swallow. Tetanus leads to death in about 1 out of 10 cases.

**PERTUSSIS (Whooping Cough)** causes coughing spells so bad that it is hard for infants to eat, drink, or breathe. These spells can last for weeks.
○ It can lead to pneumonia, seizures (jerking and staring spells), brain damage, and death.

Diphtheria, tetanus, and pertussis vaccine (DTaP) can help prevent these diseases. Most children who are vaccinated with DTaP will be protected throughout childhood. Many more children would get these diseases if we stopped vaccinating.

DTaP is a safer version of an older vaccine called DTP. DTP is no longer used in the United States.

## 2 │ Who should get DTaP vaccine and when?

Children should get 5 doses of DTaP vaccine, one dose at each of the following ages:

[faint illegible text]

DTaP may be given at the same time as other vaccines.

## 3 │ Some children should not get DTaP vaccine or should wait

○ Children with minor illnesses, such as a cold, may be vaccinated. But children who are moderately or severely ill should usually wait until they recover before getting DTaP vaccine.

○ Any child who had a life-threatening allergic reaction after a dose of DTaP should not get another dose.

○ Any child who suffered a brain or nervous system disease within 7 days after a dose of DTaP should not get another dose.

○ Talk with your doctor if your child:
  - had a seizure or collapsed after a dose of DTaP,
  - cried non-stop for 3 hours or more after a dose of DTaP, 
  - had a fever over 105°F after a dose of DTaP.

Ask your health care provider for more information. Some of these children should not get another dose of pertussis vaccine, but may get a vaccine without pertussis, called DT.

## 4 │ Older children and adults

DTaP should not be given to anyone 7 years of age or older because pertussis vaccine is only licensed for children under 7.

But older children, adolescents, and adults still need protection from tetanus and diphtheria. A booster shot called Td is recommended at 11-12 years of age, and then every 10 years. There is a separate Vaccine Information Statement for Td vaccine.

Diphtheria/Tetanus/Pertussis          7/30/2001

---

Exhibit C  page 18        D050



(6)

1

# BRADFORD REGIONAL MEDICAL CENTER
## EMERGENCY DEPARTMENT
### INSTRUCTIONS FOR FOLLOW-UP CARE

EMERGENCY ROOM
PHONE (814) 362-8274

Name ______________________

THANK YOU FOR CHOOSING BRMC EMERGENCY DEPARTMENT FOR YOUR MEDICAL NEEDS. WE HOPE YOU ARE SATISFIED WITH THE CARE YOU RECEIVED. PLEASE CALL THE EMERGENCY ROOM AT (814) 362-8274 OR THE PATIENT REPRESENTATIVE AT (814) 362-8670 IF THERE IS ANY PROBLEM. YOU HAVE RECEIVED CARE FOR AN ACUTE CONDITION. DIAGNOSIS IS NOT ALWAYS CLEAR-CUT UNDER THESE CIRCUMSTANCES AND INDIVIDUAL RESPONSE TO ILLNESS, INJURY AND TREATMENT IS UNPREDICTABLE AT TIMES. THEREFORE, SHOULD ANY OF THE FOLLOWING OCCUR, PLEASE CONTACT OR REPORT TO THE EMERGENCY ROOM OR YOUR PRIVATE PHYSICIAN.______ ☐ card given

Your current symptoms persist or worsen
New symptoms develop particularly ______
You feel you are having difficulty with medication
You have any questions that <u>you</u> feel are important,

**Other Instructions:**

[illegible handwriting]

Reviewed by D. Olson, MD
Date: 9/2/03

☐ MEDICATION
The medication you have been prescribed may cause drowsiness. Do not drink alcohol, operate machinery or drive a vehicle while using. ☐ medication information sheet given.

CULTURE REPORTS
You will be contacted if your culture results indicate that a change in your treatment will be needed.

X-RAY REPORTS
Your x-rays have been read by the Emergency Room physician. They will also be interpreted by a radiologist tomorrow. Should there by a significant change in diagnosis, you will be notified.

[illegible]
DIPTHERIA, PERTUSSIS, TETANUS
[illegible]

Manufacturer

Exhibit page C

Date

Physician Signature ______
Nurse Signature ______
I understand the instructions given to me by the

D051

⑦

7540-00-634-4176                                    AUTHORIZED FOR LOCAL REPRODUC.

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTONS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |

8/31/03    Ⓢ  Rev IM   RE Chemical burn + keratitis sustained in assault
1800                    on 8/29/03.   IM states: ① eye vision is back to normal
                                                  ② eye vision is still blurry

         Ⓞ  ① Scaling Facial Lesions: epidermis is sloughing off
                revealing hypopigmented subdermal tissue.

            ② crusting noted on lesions on nose: yellowish crusts

            ③ pus noted at eyelid margins / eyelashes    lower lids > upper lids;
                Left eye > Rt eye.

            ④ PeriOrbital EDEMA Ⓛ eye.

            ⑤ Vesicle / lesion Ⓛ lateral frontal area

         EYES:  sclera - white  conjunctiva - pink
                anterior chambers clear   Lens: clear
                Fluorescein test: ⊖ brightly fluorescein lesions seen.

         Ⓐ  - chemical burns to face c̄ cellulitis
            - chemical keratitis, bilat                          emacs! 8/31.

         Ⓟ  0. cleaned facial lesions c̄ NS + H₂O₂. IM to Apply Silvadene
            1. Keflex 500mg    1 po Q1D x 10 days                   #40 NR

            2. Motrin 800mg   1 po c̄ food/milk Q8D prn pain.    #38 Rx/ 21

            3. Silvadene Cream   Apply to facial lesions BID.     25gm #1 NR

            4. CONSULTED DR OLSON (DR. OLSON) ... 1, 2, 3 above are good
               IM to continue Erythromycin ophthalmic ointment
               No topical ophth steroids at this time.

            5. Rev in 1 day.
            6. IM understands Tx plan.

Steven Labrozzi, RPh
Pharmacist

                                                        Steven Labrozzi, PA-C
Reviewed by D. Olson, MD                                 Physician Assistant
Date  9/2/03

HOSPITAL OR MEDICAL FACILITY | STATUS | DEPART /SERVICE | RECORDS MAINTAINED AT

SPONSOR'S NAME | SSN/ID NO | RELATIONSHIP TO SPONSOR

REGISTER NO | WARD NO

CHRONOLOGICAL RECORD OF MEDICAL CARE
Medical Record
STANDARD FORM 600 (REV. 5-84)
Prescribed by GSA/ICMR
FIRMR (41 CFR) 201-9.202-1

Exhibit F   page

D052



| DATE | SYMPTONS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION *(Sign each entry)* |
|------|---------------------------------------------------------------------------|
| 9/1/03 | S: Re ✓ burns. |
| 0915 | States doing ok. Is still using eye drops - was informed |
| | to continue |
| | O: NAD |
| | HEEM: area of face c̄ hypopigmentation, ⊖ exudate, ⊖ eye tens |
| | A: S/P burns. |
| | P: ① Flu tomorrow (Re ✓ by AM nurse) |
| | ② Education - continue meds - Pt understands |
| | scded up Dr appt.                          — Eric Asp PA-C |

Reviewed by D. Olson, MD

Date: 9/2/03

Eric Asp
PA-C

STANDARD FORM 600 (REV 6-97) BACK

⑨

7-110                                                                                          NSN 7540-00-634-4127

| MEDICAL RECORD | CONSULTATION SHEET |
|---|---|

## REQUEST

| REASON FOR REQUEST | FROM: (Requesting physician or activity) | DATE OF REQUEST |
|---|---|---|
| OPTOMETRIST | Dennis Olson, MD, CO | |

REASON FOR REQUEST (Complaints and findings)

EYE EXAM: chemical fume to face at exp 8/30/03

9/2/03 seen by ophthalmologist

muscle out, pepper, and over cleaner

PROVISIONAL DIAGNOSIS

area K@ -95
OS - 85

| DOCTOR'S SIGNATURE | APPROVED | PLACE OF CONSULTATION | ☐ ROUTINE | ☐ TODAY |
|---|---|---|---|---|
| D. OLSON, M.D. | | ☐ BEDSIDE  ☐ ON CALL | ☐ 72 HOURS | ☐ EMERGENCY |

## CONSULTATION REPORT

RECORD REVIEWED  ☐ YES ☐ NO          PATIENT EXAMINED  ☒ YES ☐ NO

Visual Acuity Distance OD 20/100        OS 20/400        TONOMETRY: OD 16 mm  OS 14 mm

Near   OD        OS

open angles - dilate with (SLT 1%, try drops)        1040  10:40

External      70   Normal    no injections, no ebism

                    no staining    cornea: normal

Internal                              no scarring

Refraction OD -1.75 -.75 x 5    20/25

            OS -2.50 -.50 x 10   20/60

Dilated Retinal exam - normal        48 x 22 x 6¼

Normal corneal appearance - no stain

                                        no scarring

Diagnosis  CMA

Analysis  requires eyeglasses - left eye

order eyeglasses        TO U/R

Plan  Discuss results with resident staff        Consult ophthalmology

(Continue on reverse side)

| SIGNATURE | | REVIEWED | DATE 9/2?/03 |
|---|---|---|---|

| SIGNATURE AND TITLE | ORGANIZATION | REGISTER NO | WARD NO |
|---|---|---|---|

(10.)

· 7540-00-636-4176

AUTHORIZED FOR LOCAL REPRODU

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT  TREATING ORGANIZATION (*Sign each entry*) |

Check back chemical burn to
face on 8/29/03

9/2/03
1445hr

S) feeling ok, using Silvadene      BP 120/80
vision ok R eye - still sl blurry     P 70
L eye, feels counts watering        T 98⁶
+ throw in face 8/29/03

O) looks ok   counts finger Rt 7ct @ 4 feet
He has no corneal staining on Flores on

hypopigmented
area mid
face + nose
brow + eyes

crusting
weeping
area

Silvadene remains



A) Partial thickness burn midface
cornea none)

P) CTBB - cont of Silvadene, F/u blurr vision, fever
Silvadene (Dispense 30 gm) use daily, RF G 3 days x 2 wk

9/3/03   CB 1 wk, opt eval 9/3/03     [signature]

Reviewed By:
V. Geza, Pharm

| HOSPITAL OR MEDICAL FACILITY | STATUS | DEPART /SERVICE | RECORDS MAINTAINED AT |
|---|---|---|---|
| | | | FCI MCKEAN/FCI McKean |
| SPONSOR'S NAME | SSN/ID NO | RELATIONSHIP TO SPONSOR | |

STANDARD FORM 600 (REV 6-97)
Presented  by GSA/ICmR
FIRMR (41 CFR) 201-9.202-1

D055

(11.)

| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT  TREATING ORGANIZATION *(Sign each entry)* |
|------|-----------------------------------------------------------------------------|
| 9/3/03 13:45 | ADMIN NOTE.   IM seen yesterday by Dr. Beam. Per Dr. Beam ... D/c daily checks. Place IM on call-outs to see Optometrist on Wednesday 9/10 |
| | *S. Labrozzi* Steven Labrozzi, PA-C Physician Assistant |
| 9/5/03 0730 | S — burns healing well, some blurred vision Ⓛ eye, ↓ pain |
| SHU | O — Face - healing burns (hypopigmented areas) some crusting |
| | A - ① 2° Facial burns - healing well see note 9/2/03, 8/30/03, eyes appear clear was on to see eye Dr 9/3/03 but unable to be seen |
| | P - ① Instructed PA to bring inmate to HSU for burn evaluation & eye exam today ② Pt LEA - findings explained, prognosis be understands ① Reached eye Dr appts |
| 9/5/03 0730 | ② Gen Burns, Vision ④ Visual Acuity  OD 20/70 ... White burn OS 20/70 ... [illegible] ... [illegible] ... Fluorescein Test: ② Ⓑ [illegible] [illegible] ... [illegible] ... [illegible] |

*D. Olson, MD*
Clinical Director

*Steven Labrozzi*
Physician Assistant

7640-00-634-4178

(12.)

AUTHORIZED FOR LOCAL REPRODUCTION

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT TREATING ORGANIZATION (Sign each entry) |

CB Facial burns

/9/03
1400 hrs

S) amazing proper

O) most of facial burns are completely
healed and repigmented (!)
with the exception of some remaining peeling
under ® eye ; also ® shoulder has (deltoid)
a resolving burn 4x6cm — he has
oral ABX and silvadene which he's using

A) resolving facial burns
burn ® shoulder burn .

D) pt ed. continue meds
Recheck 6 wks & prn

SEE BELOW: M already has pre-existing
refillable Rx for these meds.
refills given.  No New Rx needed. [signature]

Steven Labrozzi, RPh
Pharmacist

H. BEAM, MD
FCI McKEAN

[signature] M Bell

/11/03     Admin. Note - refill meds
1400 Rx  1) Silvadine to areas S/A #1 RF
         2) Medical ___ ___ po T/d give ___ #20 RF

[signature] J Glenn FNP-C

| HOSPITAL OR MEDICAL FACILITY | STATUS | DEPART./SERVICE | RECORDS MAINTAINED AT |
|---|---|---|---|
| | | | FCI McKEAN |
| SPONSOR'S NAME | SSN/ID NO. | RELATIONSHIP TO SPONSOR | |

CHRONOLOGICAL RECORD OF MEDICAL CARE
Medical Record
STANDARD FORM 600 (REV. 6-97)
Prescribed by GSA/ICMR
FIRMR (41 CFR) 201-9.202-1

D057

  

## Medication Summary Sheet

Ord.Date  DONALDSON, SADRICK         B. SAYLOR
**08/30/03**  20102-018                    (0)Refills
Exp. Date
**APPLY TO AFFECTED BURN AREAS ON**
**YOUR FOR FACE 2 TIMES DAILY.**
Rx #
154132     SILVER SULFADIAZINE CREAM 1% GM  #1

Ord.Date  DONALDSON, SADRICK         S. LABROZZI
**08/31/03**  20102-018                    (0)Refills
Exp. Date
**TAKE 1 CAPSULE 4 TIMES DAILY FOR**
**10 DAYS.  (ANTIBIOTIC)**
Rx #
154134     CEPHALEXIN 500 MG CAP              #40

Ord.Date  DONALDSON, SADRICK         S. LABROZZI
**08/31/03**  20102-018                    (1)Refills
Exp. Date
**TAKE 1 TABLET WITH FOOD OR MILK 3**
**TIMES DAILY AS NEEDED FOR PAIN.**
Rx #
154135     IBUPROFEN 800 MG TAB              #21

Ord.Date  DONALDSON, SADRICK         H. BEAM,MD
**09/03/03**  20102-018                    (5)Refills
Exp. Date
**APPLY A THIN LAYER DAILY TO FACIAL**
**BURNS**
Rx #
154236     SILVER SULFADIAZINE CREAM 1% GM  #1



## Eyeglass Prescription

| TRAY NO. | ARRIVAL DATE | | PRESCRIPTION NO. |
|---|---|---|---|
| **INSTITUTION:** | | | |
| **CITY** | | | |
| **STATE** | | ZIP | |
| **LENSES** | | | Donaldson ...... |
| **EXTRA** | | | 20102 - 018 |
| **FRAME OR MTG** | | | |
| **MISC** | | | |

| | | SPHERE | CYLINDER | AXIS | PRISM | DIRECTION | IN DEC OUT |
|---|---|---|---|---|---|---|---|
| DISTANCE | R | -1.75 | -.75 | 5 | | | |
| | L | -2.50 | -.50 | 10 | | | |

| | | SEGMENT INSTRUCTIONS | | | | PUPILLARY WIDTH | |
|---|---|---|---|---|---|---|---|
| | | HEIGHT | WIDTH | INSET | | DIST. | NEAR |
| ADD | R | R | | R | R | 70 | X |
| | L | L | | L | | | |

| SEG. STYLE | ORTH. F TILLER D | EXECUTIVE TYPE | KRYPTOK | PANOPTIK | CURVEO TOP | TRIFOCAL AND TYPE | STRAIGHT TOP | OTHER. |
|---|---|---|---|---|---|---|---|---|
| | 22 | | 22 | 22 - 24 | 22 - 25 | | 22   28   45   25   35 | |

| FRAME OR SHAPE | | | EYE SIZE | BRIDGE SIZE | TEMPLE LENGTH AND STYLE |
|---|---|---|---|---|---|
| | | | | | |

SPECIAL INSTRUCTIONS
( ) LENS ONLY
( ) FRAMES ONLY

Mail to:
Federal Prison Industries
Box 100
Butner, N C  27509

BP-357(80)

D059

Exhibit C no. (14)





# U. S. Department of Justice
# Federal Bureau of Prisons

## MEMORANDUM

**DATE:**     September 24, 2003

**REPLY TO**
**ATTN OF:**  G. Cooper, Lieutenant
              Special Investigative Supervisor

**SUBJECT:**  SIS REPORT

**TO:**  Donald  Reich, Captain

**CASE # :** 03-070

**INCIDENT:** Assault, Inmate on Inmate

---

**PLACE:**  Education

**DATE:**  08-29-2003

**INMATE(S):** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
              Donaldson, Sadrick #20102-018

Incident Summary:
On 08-29-2003 at approximately ▮▮▮▮▮▮▮▮▮▮▮▮▮ approached Inmate Donaldson #20102-018 within the education department. ▮▮▮▮▮▮▮ threw a cup filled with an unidentified substance in the facial area of inmate Donaldson. Inmate Donaldson received serious burns to his facial area, his eyes and his shoulders. Inmate Donaldson received immediate medical treatment and was taken to an outside hospital. Inmate Donaldson identified ▮▮▮▮▮▮▮▮▮ as the inmate who assaulted him. ▮▮▮▮▮▮▮ was placed in the Special Housing Unit pending investigation for assault.

"Sensitive Limited Official Use Only"



Inmate Data:

██████████ is a ██████████ who is serving ██████████ with a ██████████
for ██████████████████████ He was assigned to this institution on██████████ His
projected release date is██████████ via good conduct time. He does have a CMC assignment separated
from█████████████████████████████████████████████
████████████████████████████████████████████████, ██████████,
██████████and██████████████████. He has no detainer and he is a (High) Medium security level
inmate with in-custody . His disciplinary record consists of seven Incident Reports one which involved a
serious assault prior to this incident. His legal residence is Mobile, Alabama.

**Donaldson, Sadrick #20102-018**
Donaldson is a 26 year old black male who is serving a 240 month sentence with a five year supervised
release for CPWID cocaine. He was assigned to this institution on 11-09-2001. His projected release date
is 09-16-2014 via good conduct time. He does have a CMC assignment separated from inmates
██████████████████████ He has no Detainer and he is a Medium security level inmate with in-
custody. He has a very lengthy disciplinary record totaling 19 charges as of this date.

**Staff Statements: (Memorandums)**

**B. Howard ISO August 29, 2003**
On August 29, 2003 at approximately 1pm, I (B. Howard) responded to a body alarm in education. Upon
arriving I was instructed by LT. Pfister to direct inmates as they came to me to three separate interview
rooms. As inmates completed there interviews, I secured them in the classrooms.

**W. Young, LIE**
On August 29 at approximately 1:00pm, I responded to a staff assistance needed in Education radio
transmission. Upon arrival in education, I assisted securing inmates in their assigned areas. Lt. Pfister
directed me to escort 2 inmates██████████and██████████to medical services. The inmates
appeared to have been splashed by a substance that they said was burning them. The inmates were pat
searched and escorted to health services. The inmates were treated by PA Judy Glenn. Both inmates were
interviewed by R. Corbett, L.I.E. and their statements were turned over to Lieutenant Pfister. At
approximately 2:10pm the inmates were released to education.

**Lieutenant C. Cooper, August 29, 2003**
On August 29, 2003 at approximately 1245hrs a call for assistance was sounded in the education department
I responded to the area to find that inmate Donaldson #20102-018 had a liquid substance thrown in his face
Once the area was secured I began conducting mass interviews along with Officer Brinkey. Out of the
several inmates whom were interviewed, two inmates in particular actually visually witnessed the incident
that had occured. Inmate ██████████ stated that he was sitting next to inmate Donald──────



he was hit with the substance. ███████ stated that it was over a lovers quarrel and that it was Inmate ███
████ later identified as Inmate ████████████ Inmate ██████████ stated "ever since inmate Donaldson has been released from SHU he hasn't given up any butt, that's what it's probably over.

**Lieutenant L. Pfister August 29, 2003**
An August 29, 2003, at approximately 12:45pm assistance was requested in Education.  As I arrived in education S. Nicholson, Teacher had inmate Donaldson, Sadrick #20102-018 in the mop room rinsing his face with water. C. Strade, Ed. Tech. And M. Agricola, Teacher were moving inmates from D. Conference room to the two rooms on the south end of education nearest the door to Unicor. Inmate Donaldson was escorted to Health Services for treatment for first and second degree chemical burns to his face and chest area.  Due to the extent of the burns to his face, he was sent out to the Local Hospital for further treatment.  The inmates in the South end rooms were identified, searched, interviewed, and released.  The following inmates were also treated by Health Services: ███████████████ ████████████████ no injuries noted; and ██████████████████, minor burn to forhead, were treated and released.

After a preliminary investigation, it was determined that ███████████████ threw a liquid corrsive substance on Inmate Donaldson, Sadrick #20102-018 striking him in the face and chest area.  The substance splashed and struck inmates ███████████ ● ██████████████ was assessed for injuries, having none and was placed in the Special Housing Unit.

**Principle Inmate(s) Interviews:**

████████████

On 09/20/03 at approximately 0940hrs, Lieutenant G. Cooper interviewed ██████████████████ in the Special Housing Unit. ██████ stated that the substance was a bunch of pepper and baby oil. "We were in Allenwood together and we were friends.  I came to McKean and we were friends.  There was a lot of stuff going on about me, they say I was talking to the police.  He told a few people I know that I was talking to the police.  I found out that he was talking shit about me, this could get me killed.  I put the peppered oil in a coffee cup in the unit.  I then went to education entered the classroom and sat down.  I was just dead, it was a heat of the moment thing.  I threw the substance in Donaldson's Face when I walked passed him. I left the area and went to recreation.  I'm cool, I don't have no problem but he has to keep his mouth shut about me talking to the police, I am not with that".

Donaldson, Sadrick #10495-048

On 09-20-03 at approximately 0910hrs, Lieutenant G. Cooper interviewed Inmate Donaldson #20102-018 in the Special Housing Unit.  Inmate Donaldson stated "I reported last year that ████████████ was harassing me.  He was asking to have sex with me so I had to PC.  I haven't talked to the dude, he was harassing me on the compound.  We talked and I think that he got mad because I declined his offers we never talked in a long time.  I was doing school work and he passed by me.  I looked up and he



threw something in my face. It was hot and I started screaming then people were leaving the classroom and staff came and took me to wash my face. The hospital told me it was floor stripper. I have Burns on my shoulders and face and I lost vision in my left eye.

**Medical Information:**

**Inmate Donaldson #20102-018** received 2nd degree burns to his nose and face and 1st degree burns on both shoulders. Donaldson also received severe irritation to both eyes to include temporary loss of vision in one eye.

Inmate ▆▆▆▆▆▆▆▆ received no injuries.

Inmate ▆▆▆▆▆▆▆▆ received a minor burn below his left eye.

Inmate ▆▆▆▆▆▆▆▆ received minor burns on the forehead.

**Conclusions:** Based on the conclusion of this investigation it has been determined that inmate ▆▆▆▆ ▆▆▆▆▆▆ assaulted Inmate Donaldson #20102-018 by way of striking him in the facial area with an unidentified substance. This assault left inmate Donaldson with a number of 1st and 2nd degree burns. While attempting to assault inmate Donaldson, ▆▆▆▆ also exposed inmate ▆▆▆▆▆▆ and ▆▆▆ ▆▆▆▆▆▆ to the substance causing them minor burns. ▆▆▆▆ made up a concoction of baby oil, pepper, and muslim oil mixing it up and heating it. ▆▆▆▆▆▆ reported to the education department were he sat and waited for inmate Donaldson to enter the classroom. Once seated, ▆▆▆▆ approached Donaldson and assaulted him with the substance. This was a pre meditated act which was well planned and effectively carried out, causing severe injuries..

**Action/Recommendations:.** It is this investigator's recommendation that inmate ▆▆▆▆▆▆▆ be charged with Assaulting any person. I also recommend that a 309-Disciplinary transfer be considered for this inmate. Inmate Donaldson and ▆▆▆▆ shall be made permanent separatees. I see no reason for inmate Donaldson to remain in the Special Housing Unit any longer, therefor he may be released at this time.

End of Report

Exhibit 1, page 4    D004



# FEDERAL BUREAU OF PRISONS
# memorandum
**FCI McKean, Pennsylvania**

**DATE:** November 12, 2003

**REPLY TO ATTN OF:** John J. LaManna, Warden

**SUBJECT:** Request for Transfer (Close Supervision)

**TO:** M.E. Ray, Regional Director
NERO, Philadelphia, PA

**ATTN:** C. Maiorana, Correctional Services Administrator

1.   **Name and Register Number:** DONALDSON, Sadrick Reg. No. 20102-018

2.   **Rationale for Redesignation:** On August 29, 2003, inmate Donaldson was assaulted by inmate ████████, reg. no. ████████ Specifically inmate ██████ entered the education department, approached inmate Donaldson and threw a cup of liquid striking Donaldson in the face, eyes, and shoulders.  This assault caused first and second degree burns and temporary loss of sight in one eye.  The liquid was later identified as a heated mixture of baby oil, pepper, and Muslim oil.

Based on this assault and separation concerns, it is recommended inmate Donaldson transfer via close supervision.  In addition to a separation assignment between ██████, inmate Donaldson is also to remain separated from ██████████, reg. no. ████████ an inmate housed within the general population at FCI McKean.  The separation need between Donaldson and ██████ stems from an assault which occurred on January 5, 2003, in the special housing unit at FCI McKean.  This incident involved ██████ throwing a cup of disinfectant at Donaldson.  He was found guilty of Assaulting Without Serious Injury, code 224, on April 23, 2003.

3.   **Proposed Transfer Code:**   Close Supervision (323)

4.   **CIMS Assignment:** Separation

5.   **Release Destination:** Northern District of Alabama



Charles Kindervater - INMATE DONALDSON #20102-018    (6.)    Page

**From:**       Stacey Crate
**To:**         Chiodo, Mark D.;  McAlpine, Ronald P.
**Date:**       11/20/02 1:49PM
**Subject:**    INMATE DONALDSON #20102-018

DONALDSON A.K.A. "LEXUS", IS CURRENTLY HOUSED IN SHU FOR PROTECTIVE CUSTODY.
INMATE ███████████, ████████████████████████, TELLS ME TODAY THAT  INMATE
████████████ A.K.A. ██████████ WAS DONALDSON'S "HUSBAND" AND THAT ██████
PUT OUT A "KNIFE" ON ██████████ BELIEVE IT OR NOT, ████████ WAS MAD BECAUSE
DONALDSON WAS DOING HAIR  ON OTHER INMATES. FYI  DONALDSON IS CURRENTLY
CELLED WITH █████ IN SHU.  PRIOR TO ████ GETTING LOCKED UP, ████ WAS DONALDSON 'S
OLD FLAME.  ANYTHING ELSE, LET ME KNOW.

FOI EXEMPT



U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

CIM CASE INFORMATION SUMMARY

| Name: DONALDSON, Sadrick | Register Number: 20102-018 |
|---|---|
| Date:  October 31, 2003 | Institution: FCI McKean, Pennsylvania |

"Refer to Page 1"

SPECIFIC ASSIGNMENTS:

A. **STATE PRISONER**
_____COOP WITNESS
_____REGULAR CONTRACTUAL BOARDER

D. **BROAD PUBLICITY**
_____
_____

B. **DISRUPTIVE GROUP**
_____ MEMBER
_____ SEPARATION (NON-MEMBER)

E. **THREATS TO GOVERNMENT OFFICIALS**
_____HISTORY OF THREATS
_____SURVEILLANCE

C. **SPECIAL SUPERVISION**
_____
_____

G. **SEPARATION**
__XX__THREAT ASSESSMENT
_____SPEC. MGT. CASE

SOURCE OF INFORMATION (NAME AND REGISTER NUMBER OF SEPARATEES, IF APPLICABLE

Prepared by:  R L Moore
R. L. Moore, Case Manager

Reviewed by: _____
Deanna Tronetti, CIM Coordinator

Note: File as top sheet in Section 1 of the Inmate Privacy Folder.
   Include documentation.  Not to be forwarded to the inmate.

Distribution:    Original - Central File
                 Copy - Regional Office

(Not to be completed for WITSEC Cases)

BP-339(51)
SEPTEMBER 1990

FOI EXEMPT

FOI EXEMPT   Exhibit C

D015

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

CIM CASE INFORMATION SUMMARY

| Name: DONALDSON, Sadrick | Register Number: 20102-018 |
|---|---|
| Date:   October 31, 2003 | Institution: FCI McKean, Pennsylvania |

RATIONALE FOR CIM CLASSIFICATION: On August 29, 2003, inmate ██████████ assaulted inmate Donaldson causing temporary loss of vision in one eye and second and third degree burns to his face and shoulders. Based on this assault and continued animosity, they should remain separated. On April 24, 2003, inmate ██████████ appeared before the disciplinary hearing officer at FCI McKean and was found guilty of Assaulting Without Serious Injury, code 224. The specifics of this incident reveal inmate ████████ threw a cup of disinfectant at Sadrick Donaldson. Based on continued animosity, inmates Donaldson and ██████████ should remain separated. ██████████, prepared an investigation dated ██████████ regarding the possible ██████ of inmate Donaldson by ██████████. Based on the serious nature of this incident, the report concluded inmates Donaldson and ██████ should remain separated. ██████████ recommends ██████████ remain separated from Donaldson based on their cooperation with the government against each other. An investigation was prepared by ██████████ This investigation concluded inmates  Donaldson ██████████████████████████ should remain separated from each other. These inmates were involved in a physical altercation a ██████████ and weapons were used.

SPECIFIC ASSIGNMENTS:

**A. STATE PRISONER**
_____COOP WITNESS
_____REGULAR CONTRACTUAL BOARDER

**D. BROAD PUBLICITY**
_____
_____

**B. DISRUPTIVE GROUP**
_____ MEMBER
_____ SEPARATION (NON-MEMBER)

**E. THREATS TO GOVERNMENT OFFICIALS**
_____HISTORY OF THREATS
_____SURVEILLANCE

**C. SPECIAL SUPERVISION**
_____
_____

**G. SEPARATION**
 XX__THREAT ASSESSMENT
_____SPEC. MGT. CASE

SOURCE OF INFORMATION (NAME AND REGISTER NUMBER OF SEPARATEES, IF APPLICABLE

1.    SIS Report prepared by G. Cooper, SIS Lieutenant, FCI McKean, to Donald Reich, Captain, FCI McKean

2.    Discipline Hearing Officer Report, hearing date April 24, 2003, prepared by James Linden, incident report number 1062306.

3.    Memorandum dated ██████████ prepared by ██████ Special Investigative Supervisor, ████ ██████, to ██████ Warden, ██████

4.    Memorandum dated ██████████, prepared by ██████ Special Investigative Supervisor, ██████████ to ██████ Captain, ██████████

5.    Letter dated ██████████ prepared by ██████████████████, to ██████ Warden, ██████████.

Prepared by: _R.D.Moore_____          Reviewed by: _Jean M. Miller dem___
R. L. Moore, Case Manager                        Deanna Tronetti, CIM Coordinator

Note: File as top sheet in Section 1 of the Inmate Privacy Folder.
     Include documentation.  Not to be forwarded to the inmate.

Distribution:        Original - Central File
                     Copy - Regional Office

(Not to be completed for WITSEC Cases)

BP-339(51)
SEPTEMBER 1999



UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

SADRICK DONALDSON,
        Plaintiff

        V.                                    Civ. Action. No. 04-CV-257

UNITED STATES OF AMERICA
        Defendant.


PLAINTIFF'S FIRST INTERROGATORIES DIRECTED TO
DEFENDANT WARDEN: JOHN J. LAMANNA, F.C.I. McKEAN

1.  State your full name and job title.

        Response: John J. LaManna
                  Warden

2.  State the name and place of your employment.

        Response: Federal Correctional Institution,
                  Edgefield, South Carolina

3.  State in detail what your job details are.

        Response: I am responsible for the overall supervision of the
daily operations of the FCI Edgefield.

4.  State if you ever have received, viewed and/or reported and/or
investigated any reports regarding an inmate by the name of
Sadrick Donaldson, No.# 20120-018, regarding an incident in which
he received medical attention.

        Response: I do not recall receiving, viewing and/or reporting
and/or investigating any reports regarding an incident in which
the Plaintiff received medical attention.  As Warden at FCI
McKean, I was not directly involved in any aspect of an
investigation that may have occurred regarding an incident in
which the Plaintiff required medical attention.

        I signed a Request for Transfer Memorandum concerning the
Plaintiff dated November 12, 2003, which summarized an incident of
August 29, 2003, in which the Plaintiff was assaulted by another
inmate with a cup of liquid.  I have no personal knowledge of the
facts underlying this summary.

Exhibit (E.) page (1)

5.    State in detail what the incident was about in regards to Inmate Sadrick Donaldson No. # 20120-018, and his medical treatment received at F.C.I. McKean on and about the year of 2003.

Response: I have no personal knowledge of any incident involving the Plaintiff or his medical care in 2003.

6.    State and identify all Reports, Investigational -- Notes, Officer Reports, and S.I.S. Reports, Special Investigation Services, that have been submitted to your office by any agent and/or agency, that reported on any incident, regarding the injury and/or treatment medically for the inmate by the name of Sadrick Donaldson.

Response: I do not recall any such reports being submitted to my office, except that referenced in Response # 4.

7.    State in detail and identify all reports and or notes that have been received by your office from any agents, and/or outside investigations regarding the incident in the year of 2003, regarding the plaintiff, Sadrick Donaldson, #20120-018, and his medical treatment received on or about the year of 2003.

Response: A SIS Report was prepared September 24, 2003, that would routinely have been provided to my office for review.

8.    State in detail all and any information that you have regarding the plaintiff, Inmate Sadrick Donaldson, and his classification to any unit that is identified at F.C.I. McKean as "Protective Custody", if so, state and identify all documents reports and/or information regarding the placement of the plaintiff in such identified unit.

Response:  I do not recall any information concerning the request of the Plaintiff to be placed in a "protective custody" (PC) unit at FCI McKean.

9.    State if that in the year of 2003, you viewed and/or saw photos and or the plaintiff himself regarding an incident which he had been burned and/or injured by a chemical that had been thrown on him in an area of the F.C.I. McKean Prison, in the Education Dept area, in the year of 2003.  If so, describe in detail what such photos and/or information you viewed regarding this incident.

Response: I do not recall viewing any photos or the Plaintiff himself.

10.   State and identify any and all officers and/or counselors, and/or agents under your control that have submitted reports

Exhibit (E) page (2)    2

(3.)

and/or notes regarding the incident of the injury of the plaintiff in the year of 2003.

Response: I have no specific knowledge of any staff members who might have submitted reports or notes regarding this incident, other than those detailed in the SIS Report dated September 24, 2003.

11.  State in detail if the plaintiff had to be taken from the F.C.I. Prison McKean, to any Hospital and or emergency room regarding the injury that the plaintiff received in the Educational Building area at F.C.I. McKean on or about the year of 2003.

Response: I do recall that the Plaintiff was transported to an outside medical facility for treatment after being assaulted by another inmate in August 2003.

12.  State in detail if the plaintiff Sadrick Donaldson #20120-018 had ever submitted any request to be placed under "Protective Custody" while at F.C.I. McKean.  If your answer is yes, in detail state and identify all reports and or notes and the persons that made them in regards to your answer of this interrogatory.

Response: I am aware that there is a report dated December 2, 2002, indicating a request from the Plaintiff for Protective Custody, but I have no personal knowledge of the contents of that report.  I was not involved in the writing or decisionmaking detailed in that document.

13.  State the date in which the plaintiff was received at F.C.I. McKean.

Response: November 9, 2001

14.  State in detail what, if any, reports were submitted to your office and/or to any agents under your control as employees regarding any so reported incidents regarding if another inmate at F.C.I. McKean, had threatened and/or had reported that the plaintiff would be in danger if specific inmates came into contact with the plaintiff in the years of 2002 to 2003.

Response: I have no personal knowledge of any such reports being submitted to my office or to the office of any of my former subordinates at FCI McKean.

Exhibit (E) page (3.)    3



I declare that any and all records attached to this declaration are true and accurate copies maintained in the ordinary course of business by the Federal Bureau of Prisons. I further declare that the foregoing is true and correct to the best of my knowledge and belief, and is given under penalty of perjury pursuant to 28 U.S.C. §1746.

_____                    _____
John J. La Manna                                    Date    4-12-05
Warden

Exhibit (E) page (4)



U.S. Dep    ment of Justice

Federal Bureau of Prisons

---

*Federal Correctional Institution, McKean*    *Bradford, Pennsylvania 16701*

December 2, 2002

**MEMORANDUM FOR CINDY BILLISITS, ASSOCIATE WARDEN (PROGRAMS)**
**FCI MCKEAN, PENNSYLVANIA**

FROM:    CHARLES KINDERVATER, UNIT MANAGER

THRU:    DONALD REICH, CAPTAIN

SUBJECT:    REQUEST FOR PROTECTIVE CUSTODY
(DONALDSON, Sadrick #20102-018)

**INMATE DATA:**

Inmate Donaldson is a 25 year old offender who arrived at FCI McKean on November 9, 2001. He is serving a 240 month sentence for Conspiracy to Possess with Intent to Distribute Crack Cocaine. Inmate Donaldson has a projected release date of August 20, 2014, via good conduct time. He has no detainers at this time.

**INCIDENT SUMMARY:**

On November 12, 2002, inmate Donaldson was placed in the special housing unit (SHU) after requesting protective custody. The inmate was interviewed that same day by Unit Manager Kindervater and Counselor Buck in the special housing unit.

**INVESTIGATION:**

During the interview, inmate Donaldson stated that an inmate named ▇▇▇▇▇ was pressuring him for a relationship. This inmate has been identified as ▇▇▇▇▇ ▇▇▇▇▇. Donaldson stated that ▇▇▇and he were involved in a relationship at USP Allenwood. Donaldson stated that ▇▇▇▇▇wanted to continue the relationship here at McKean but that he did not want to. Donaldson stated that ▇▇▇has been coming to the unit and pressuring him in the evenings. He also stated that three other inmates approached him on the compound about a month ago for sex but did not assault him. Donaldson stated that ▇▇▇tried to prevent him from talking to any other inmates and gets very defensive towards any inmates who talk to him. Donaldson stated he does not think that ▇▇▇will hurt him but that he might hurt someone else if he sees someone talking to Donaldson. Donaldson stated he could not take it any more and would like to remain in SHU or be transferred to get away from ▇▇▇ He also started crying several times during the interview.

▇▇▇▇▇ interviewed inmate ▇▇▇and asked him if it was safe for Donaldson to return to general population ▇▇▇▇▇

Exhibit

Cindy Billisits, AW(P)
Page 2
December 2, 2002

RE:    DONALDSON, Sadrick
       Reg. No. 20102-018



**OTHER INFORMATION:** (In this section include all related information available to the unit team at the time of the investigation that supports the teams comments/conclusions, i.e., inmate statements, staff memos, C/I information, PSI, central file, media, security camera, etc.)

I have verified that inmate Donaldson and ████████ were incarcerated at USP Allenwood during the same time period. I have also interviewed ████████ stated that he has witnessed inmate ████████ coming into the unit on numerous occasions and spending time arguing with Donaldson in his cell. ████████ stated that the night before Donaldson requested to be placed in the SHU, inmate ████ was in Donaldson's cell for about an hour and they were arguing. He stated that Donaldson was up crying all night and then checked in to the SHU. Inmate ████████ approached me several months ago and requested to transfer to unit BB. ████ was also asking Captain Reich for a unit transfer to unit BB and was very persistent in his attempt to move from unit DB to BB. ████████ stated that the reason he wanted to move to unit BB was to help out the staff as an informant on illegal activities which were being conducted in unit BB.

**COMMENTS/CONCLUSION:** Based on the information provided to Mr. Buck and me by inmates Donaldson, ████████████, it appears there is some tension between inmate Donaldson and ████████ There has been no evidence presented which would lead us to believe there is a threat to Donaldson's safety. I recommend Donaldson should be returned to the general population at FCI McKean and be more closely monitored by unit staff and officers to prevent visitors from other units from entering the unit. I also recommend a picture of inmate ████████ be maintained in the unit BB officer's office, at least temporarily, so any officers will be alerted to ████████ entering the unit unauthorized. Inmate ████████ currently resides in unit DB.

FOI EXEMPT

Prepared By: _____
       Charles Kindervater, Unit Manager

Reviewed By: _____ SIS
       Mark Chiodo, SIS

Reviewed By _____
       Donald Reich, Captain

*Return to general population*
Recommendations

*Concur. Return to general population*
Recommendations

*Return to general population*
Recommendations

Exhibit (F) page (2)   D036      FOI EXEMPT

Cindy Billisits, AW(P)
Page 3
December 2, 2002

(3)

RE:    DONALDSON, Sadrick
        Reg. No. 20102-018

Reviewed By: _C. Billisits_          _Counsel Donaldson and_
        Cindy Billisits, AW(P)              Decision/Action Ordered

██████ concerning
no inter-unit visits.
Let's try general
population.

FOI EXEMPT

D037

Exhibit (F.) page (3)

SEP-24-2004 FRI 02:29 PM FCI Allenwood        FAX NO. 570 547 7751        P. 02

**ADMINISTRATIVE DETENTION ORDER**

U.S. DEPARTMENT OF JUSTICE                                FEDERAL BUREAU OF PRISONS

FCI McKean, Pennsylvania
Institution

Date/Time:  11-12-02 / 1:30 A.M.

TO      : Special Housing Unit Officer

FROM    : T.S. Mortimer, Lieutenant                  ,  (Name/Title)

SUBJECT : Placement of  Donaldson, Sedrick          (UNIT B-B) Reg. No. 20102-018, in Administrative Detention

____ (a) Is pending a hearing for a violation of Bureau regulations;
____ (b) Is pending investigation of a violation of Bureau regulations;
____ (c) Is pending investigation or trial for a criminal act;
XX  (d) Is to be admitted to Administrative Detention

   XX  (1) Since the inmate has requested admission for protection;
   I hereby request placement in Administrative Detention for my own protection.

        Inmate Signature/Register No.: _Sedrick Donaldson_  26162-018

        Staff Witness Printed Name Signature:  J. Hribik, S.O.S. /

____ (2) Since a serious threat exists to individual's safety as perceived by staff, although person has not
        requested admission; referral of the necessary information will be forwarded to the UDC/DHO for
        appropriate hearing.

____ (e) Is pending transfer or is in holdover status during transfer.
____ (f) Is pending classification; or bed space in the general population
____ (g) Is terminating confinement in Disciplinary Segregation and has been ordered into Administrative Detention by
        the Warden's designee.

It is this officer's decision based on all the circumstances that the above named inmate's continued presence in the general
population poses a serious threat to life, property, self, staff, other inmates, or to the security or orderly running of the
institution because*

You are being placed in administrative detention per your own request for protection.

Therefore, the above named inmate is to be placed in Administrative Detention until further notice.  The inmate received a
copy of this Order on (date / time)   11-12-02 / 1:30 AM

Staff Witness Signature/Printed Name  K. Paulik, Senior Officer                Date   11-12-02

*In the case of DHO action, reference to that order is sufficient.  In other cases, the officer will make an independent
review and decision, which is documented here.

Record Copy - Inmate Concerned (not necessary if placement is a result of holdover status); Copy - Captain; Copy - Unit Manager;
Copy - Operation Supervisor - Administrative Detention Unit; Copy - Central File

(This form may be replicated via WP)                        Replaces BP-308(52) of JAN 88

Exhibit (F)  page (4)        D060                                Exhibit D



### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SADRICK DONALDSON, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 04-257E |
|       v. | ) | |
| | ) | JUDGE McLAUGHLIN |
| | ) | MAGISTRATE JUDGE BAXTER |
| UNITED STATES OF AMERICA, | ) | |
|     Defendant. | ) | |

### DEFENDANT'S ANSWERS TO PLAINTIFF'S REQUEST FOR ADMISSIONS

AND NOW, comes Defendant, United States of America, by its attorneys, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, and Paul E. Skirtich, Assistant United States Attorney for said District, and files the following Answers to Plaintiff's Request for Admissions:

1.    Defendant denies the averments set forth in paragraph 1 of Plaintiff's Request for Admissions as stated.  The United States admits that the Plaintiff entered the Segregated Housing Unit (SHU) at FCI-McKean beginning November 12, 2002; that an investigation ended on December 2, 2002; and that on December 19, 2002, prison personnel ordered the Plaintiff back to the general population, but Plaintiff refused to leave the SHU, which initiated disciplinary action against the Plaintiff.

2.    Defendant denies the averments set forth in paragraph 2 of Plaintiff's Request for Admissions as stated.  The United States admits that the investigation of Plaintiff's complaints began on November 12, 2002, and ended on December 2, 2002.

Exhibit (G)  page ( 1.)



3.    The United States cannot truthfully admit or deny the statement set forth in paragraph 3 of Plaintiff's Request for Admissions since it is unclear what Plaintiff is averring.  The United States admits that on December 19, 2002, Plaintiff refused an order to return to the general population and that on December 20, 2002, Plaintiff appeared before the Unit Disciplinary Committee (UDC), but further admissions or denials cannot be made.

4.    Defendant denies the averments set forth in paragraph 4 of Plaintiff's Request for Admissions as stated.  The United States admits that on November 12, 2002, Plaintiff notified prison personnel that Eric Drayton was pressuring him for a relationship; that Plaintiff was placed in the SHU; and that an investigation ensued until December 2, 2004.

5.    Defendant admits the averments set forth in paragraph 5 of Plaintiff's Request for Admissions.

6.    Defendant admits the averments set forth in paragraph 6 of Plaintiff's Request for Admissions.

7.    Defendant denies the averments set forth in paragraph 7 of Plaintiff's Request for Admissions as stated.  On November 12, 2002, Plaintiff told prison personnel Gary Buck and Charles Kindervater that Eric Drayton was pressuring him for a relationship.

Exhibit (G) page (2)    2

8.    Defendant denies the averments set forth in paragraph 8 of Plaintiff's Request for Admissions as stated.  The United States avers there are no signed statements of the Plaintiff in his "central file" at the Bureau of Prisons.  Additionally, the United States admits that the SIS Lieutenant at FCI-McKean reviewed the reports which contained Plaintiff's allegations of pressure applied by Eric Drayton.

9.    Defendant admits the averments set forth in paragraph 9 of Plaintiff's Request for Admissions.

10.    Defendant denies the averments set forth in paragraph 10 of Plaintiff's Request for Admissions as stated.  The United States admits that the Unit Team of Gary Buck and Charles Kindervater knew Plaintiff requested to be placed in the SHU on November 12, 2002.

11.    Defendant denies the averments set forth in paragraph 11 of Plaintiff's Request for Admissions as stated.  The sole Defendant is the United States.  Also, see answers to paragraphs 1, 3, and 7.

12.    Defendant denies the averments set forth in paragraph 12 of Plaintiff's Request for Admissions as stated.  The United States avers that 28 C.F.R. § 541.23 provides guidance to prison personnel before inmates are sent to the SHU.

Exhibit (G) page (3.)          3



13.  Defendant admits the averments set forth in paragraph
13 of Plaintiff's Request for Admissions.

14.  Defendant admits the averments set forth in paragraph
14 of Plaintiff's Request for Admissions.

15.  Defendant denies the averments set forth in paragraph
15 of Plaintiff's Request for Admissions as stated.  The United
States admits that only authorized inmates are allowed in the
Education Department classrooms when class is in session, and no
inmate is permitted to hurl a hot substance in the face of other
inmates.

16.  Defendant admits the averments set forth in paragraph
16 of Plaintiff's Request for Admissions.

17.  Defendant denies the averments set forth in paragraph
17 of Plaintiff's Request for Admissions as stated.  The United
States admits that Psychologist Doctor Walter Rhinehart saw the
Plaintiff in the SHU after November 12, 2002.

18.  Defendant denies the averments set forth in paragraph
18 of Plaintiff's Request for Admissions as stated.  See answer
to paragraph 8 above.

19.  Defendant admits the averments set forth in paragraph
19 of Plaintiff's Request for Admissions.

20.  Defendant denies the averments set forth in paragraph
20 of Plaintiff's Request for Admissions as stated.

Exhibit (G) page (4)          4



21.  Defendant denies the averments set forth in paragraph 21 of Plaintiff's Request for Admissions as stated.  The United States admits that on August 29, 2003, Plaintiff suffered injuries as reported to prison staff and observed by medical personnel at the Bradford Regional Medical Center that same day.

22.  Defendant denies the averments set forth in paragraph 22 of Plaintiff's Request for Admissions as stated.

23.  Defendant admits the averments set forth in paragraph 23 of Plaintiff's Request for Admissions since Plaintiff testified at deposition that Eric Drayton was placed in the SHU with Plaintiff on one day and was removed the next day after Plaintiff complained.  Plaintiff also testified that Drayton did not touch him while they were housed in the SHU.

                    Respectfully submitted,

                    MARY BETH BUCHANAN
                    UNITED STATES ATTORNEY


                    PAUL E. SKIRTICH
                    Assistant U.S. Attorney
                    Western District of PA
                    U.S.P.O. & Courthouse
                    700 Grant Street, Suite 4000
                    Pittsburgh, PA 15219
                    (412) 894-7418
                    PA ID No. 30440

*Exhibit (G) page (5)*    5

(6.)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Answer to Plaintiff's Request for Admissions was served by first-class mail, postage-prepaid, on this 15th of September, 2005, to the following:

> Sadrick Donaldson
> Register No. 20102-018
> FCI Allenwood
> P.O. Box 2000, 4-B
> White Deer, PA 17887-2000

PAUL E. SKIRTICH
Assistant United States Attorney

Exhibit (G) page (6.)

**Commissary Order Form  FCI  McKean**

(1.)

NAME _____

RE SEE SPENDING LIMIT APRIL 21, 2003

REG. NO. _____

DATE _____

Anyone leaving the Commissary after submitting
a list will not be sold any merchandise  No refunds
or exchanges!   **All sales are  F I N A L !!**
NO ADD ONS!   CHECK OUT-OF-STOCK!
K - DENOTES KOSHER ITEM

| AIR GRAM   (SINGLE) | | $ .70 | PHOTO TICKETS (MAX 5) | | $ 1.00 |
|---|---|---|---|---|---|
| .05 STAMPS (STRIP OF 5) | | $ .25 | VENDING CREDITS (1-25) | | $ 1.00 |
| .23  STAMP   (STRIP OF 5) | | $ 1.15 | | | |
| .37  STAMP   (STRIP OF 10) | | $ 3.70 | .01 STAMP   (STRIP OF TWENTY) | | .20 |
| .37  BOOK STAMPS   (20) | | $ 7.40 | BIRTHDAY CARDS ---6,......,7,......8, | | .75 |
| .50 STAMPS (10) | | $ 5.00 | GENERAL OCC -- 1,---2,---3,---4,-- 5, | | .75 |
| **CANNED GOODS** | | | **TOBACCO PRODUCTS** | | |
| CHICKEN | | 1.35 | DURANT FULL FLAVOR | 2.80 | **PERSONAL HYGIENE** |
| KIPPER SNACKS | K | 1.45 | GPC MENTHOL | 3.85 | HAIR BRUSH (1) | 1.20 |
| CHILI | | 1.45 | NEWPORT | 5.50 | AFRO PICK   (2) | .50 |
| TUNA FISH | K | 1.20 | KOOLS | 5.50 | VENTED BRUSH (1) | .95 |
| SALMON FLAKES | K | 1.05 | MARLBORO | 5.50 | WAVE BRUSH(1) | 2.75 |
| MACKEREL | K | 1.10 | MARLBORO LIGHTS | 5.50 | SUN BLOCK | 3.40 |
| FISH STEAKS | K | .90 | DURANT NON-FILTER | 2.80 | SUN TAN LOTION | 2.75 |
| SLICE SALAMI | | 1.75 | CAMELS | 5.50 | TOENAIL CLIP (1) | .85 |
| PEPPERONI SLICE | | 1.75 | CPT. BL. PIPE TOBACCO | 3.50 | FINGERNAIL CLIP (1) | .40 |
| | | | RED MAN CHEW (10) | 2.75 | MUSCLE RUB | 2.10 |
| | | | COPENHAGEN(10) | 4.00 | SOAP DISH (1) | .65 |
| CHEESE COLBY | | 3.05 | SKOAL RED (10) | 4.00 | TOOTHBRUSH HLD(1) | .45 |
| | | | SKOAL GREEN (10) | 4.00 | SEWING KIT (1) | 1.90 |
| **S O D A S** | | | SKOAL CHERRY(10) | 4.00 | LOCKER MIRROR (1) | 2.20 |
| PEPSI (6 PACK) | K | 2.15 | SKOAL CLASSIC | 4.00 | WHITE BATH TOWEL | 7.25 |
| | | | | | DENTAL FLOSS PICK | 1.35 |
| | | | | | ROLAIDS | .75 |
| DIET PEPSI (6 PK) | K | 2.15 | MATCHES | .70 | CHAPSTICK | 1.35 |
| HAWAIIAN PUNCH | K | 2.15 | | | MAGIC SHAVE GOLD | 2.20 |
| DR. PEPPER (6PK) | | 2.15 | PIPE FILTER   (1) | .40 | JERGENS SK LOTION | 4.75 |
| ICE TES PEACH.EA | | 1.35 | CIG. PAPER | .55 | BABY OIL | 2.00 |
| BOTTLE WATER | K | .45 | BUGLER | 1.20 | SKIN CARE LOT | 2.15 |
| | | | KITE | 1.20 | FOOT POWDER | 2.40 |
| | | | BLACK & MILD CIGARS | 1.85 | BABY POWDER | 2.10 |
| **SNACKS** | | | | | DK&LOVEL SHAMPO | 2.95 |
| NATURAL POPCORN | | .50 | | | AFRICAN PRIDE | 6.00 |
| BUTTER  POPCORN | | .50 | **PERSONAL HYGIENE** | | PERFUMED OIL | 4.50 |
| | | | MINT MOUTHWASH | 2.75 | TWEEZERS (1) | .55 |
| | | | FABRIC SOFTENER | 1.90 | PROLINE HAIR FD | 2.40 |
| CAKE DONUTS | K | .45 | TIDE DETERGENT | K | 5.80 | VO5 HAIR GEL | 2.75 |
| GRAN BAR HON OAT | | 1.70 | HERITAGE DETERGENT | 1.30 | BALM BAR | 2.75 |
| GRAN BAR C CHP. | K | 1.70 | IRISHSPRING SOAP | .80 | MURRAY S POMADE | 2.20 |
| HONEY BUNS | K | .35 | TONE SOAP | .90 | CURL ACTIVATOR | 1.45 |
| FIG BARS | K | 1.25 | DOVE SOAP | 1.60 | PETROLEUM JELLY | 1.05 |
| OATMEAL PIES | K | 1.15 | NEUTROGENA SOAP | 3.40 | HERT. FACE CREAM | 1.60 |
| COSMIC BROWNIE | | 1.20 | DENTURE TPASTE | 3.45 | ARTRA SKIN CREAM | 4.80 |
| NUTTY BARS | | 1.30 | DENTUR TOOTHBRUSH | 1.20 | HAIR RELAXER | 8.85 |
| | | | COLGATE-TPASTE | 3.75 | Q-TIPS | 2.10 |
| | | | AIM TOOTHPASTE | 2.05 | HERT HAIR COND. | 1.60 |
| | | | SENSODYNE-TP | 5.95 | HEAD & SHOULDERS | 3.75 |
| | | | TOOTHBRUSH-MED | 1.10 | PERT W/COND. | 4.80 |
| NAVY BEAN SOUP | | 1.15 | TOOTHBRUSH-SOFT | .45 | SUAVE SHAMPOO | 1.70 |
| | | | TOOTHBRUSH-FIRM | .55 | PANTENE SHAMPOO | 5.35 |
| | | | DENTAL FLOSS | 1.55 | SHOWERSHOE 9-10 (2) | 3.20 |
| | | | EFFERGRIP CREAM | 3.60 | SHOWERSHOE 11-12(2) | 3.20 |
| | | | MENNEN ANTI-PERS | 3.10 | COCO BUTTER STICK | 1.30 |
| | | | AFTASHAVE LOTION | 2.70 | THERMAL CUP (1) | 1.95 |
| | | | HERITAGE ROLL-ON | 1.40 | THERMAL MUG (1) | 2.60 |
| | | | MENNEN SPEED STK | 2.35 | C/T LENS  SOLUTION | 4.90 |
| | | | GIL  SENSOR RAZOR | 4.90 | CERAMIC SLIP | 14.00 |
| MARINARA SAUCE | | 3.55 | GIL  SENSOR BLADE | 6.25 | COMBINATION LOCK | 5.80 |
| | | | SHAVING CREAM | 1.30 | SAFETY SCISSORS (1) | 6.35 |
| | | | DISPOSABLE RAZOR | 1.40 | MICRO BOWL 24oz (1) | 1.50 |
| | | | MAGICSHAVE CREAM | 3.50 | SULFUR 8 | 3.35 |

*(handwritten, right margin, vertical):* The Raynox Orchard 10 years F.C.I. to remove this product from the shelfs. 5 months before some of the mixture was thrown into my face !

*(handwritten, bottom):* Exhibit
(H.) page(1)

②

| BEVERAGES | | | SNACKS & CANDY | | MISCELLANEOUS | |
|---|---|---|---|---|---|---|
| HERBAL TEA | K | 1.15 | REESE CUP MINI | 2.05 | PRINT WHEEL (1) | 22.10 |
| NESTEA TEA | K | 3.95 | M&M PLAIN | K | 3.25 | TYPEWRITER RIB | 1.65 |
| INST TEA LEMON | | 1.60 | MIXED NUTS | K | 2.40 | CORRECTION TAPE | 3.20 |
| TASTERS CHOICE | K | 6.85 | DRY ROASTED NUTS | C | 3.70 | DICTIONARY | 3.05 |
| SUGAR | K | 1.08 | M&M PEANUTS | C | 3.25 | BOOKLIGHT BULBS | 6.50 |
| COLOMBIAN | | 2.45 | HONEY ROAST NUTS | C | 1.80 | HEADBAND | 1.95 |
| INST HOT CHOC | | 1.35 | CASHEW NUTS | | 1.20 | WRISTBAND (2) | 2.10 |
| RAS/LEMONADE | | 1.75 | SUGAR FREE CANDY | K | 60 | POCKET FOLDERS | .55 |
| TANG | | 1.80 | STARLIGHT MINTS | | 60 | BOOKLIGHT (1) | 17.30 |
| CREAMER | K | 90 | FIREBALL CANDY | | 60 | PHOTO ALBUM(1) | 2.90 |
| COL DECAF | | 3.00 | JOLLY RANCHERS | | 70 | LEGAL ENVELOPES | .15 |
| INTER COFFEE SAMPL | | 3.15 | BIT O HONEY | | 60 | LEGAL PAD(2) | 2.65 |
| SUGAR TWIN | | 1.65 | CREMESAVER ORANGE | | 2.10 | HANDBALLS(2) | 3.05 |
| FOOD ITEMS | | | CREMESAVER RASP | | 2.10 | POKER CARDS(2) | 2.45 |
| | | | WERTHERS CANDY | | 2.10 | PINOCHLE CARDS(2) | 2.45 |
| | | | SNICKERS (6PK) | K | 3.00 | 1 GAL THERMAL JUG | 10.80 |
| SALTINE CRKRS | K | 1.50 | | | | SHOEPOLISH-BLACK | 2.05 |
| CHEESE CRACKERS | | 1.80 | CHEESE NACHOS | | 1.00 | SHOEPOLISH-NTRL. | 1.95 |
| SNACKERS | K | 2.25 | BBQ POTATO CHIPS | | .95 | SHOE LACES-WHITE- | 1.05 |
| OATMEAL-VAR PACK | K | 2.75 | POTATO CHIPS | K | .95 | SHOE INSOLES | 2.15 |
| MATZO CRACKERS | K | 3.70 | TORTILLA CHIPS | | 1.40 | AA BATTERIES(4) | 2.35 |
| CHIPARIFIC COOKIES | K | 2.20 | BBQ CORNCHIPS | | 1.65 | AAA BATTERIES(4) | 2.40 |
| SHARP SQUEEZE CH | | 2.80 | PRETZELS | | 1.35 | C BATTERIES (4) | 2.35 |
| JALAPENO SQUEEZ CH | | 2.80 | WHEAT BREAD | K | 1.30 | ANTIFUNGAL CREAM | 1.60 |
| STRAWBERRY JELLY | | 1.90 | FLOUR TORTILLAS | | .75 | SANGEAN RADIO | 48.90 |
| PICANTE SAUCE | | 1.85 | | | | KOSS HEADPHONES(1) | 34.60 |
| GRAT. PARM CHEESE | | 3.60 | PRANGLES PLAIN | | 1.75 | STORAGE BIN | 16.90 |
| JALEPENO PEPPERS | | 2.15 | ICE CREAM | | | EARPHONES-HP/3(1) | 5.40 |
| LOUISANA HOT SAU | K | 70 | ICE CREAM PNTS | K | 1.50 | WATCH-TIMEX (1) | 32.50 |
| PEANUT BUTTER | K | 2.20 | FROZEN YOGURT | K | 1.50 | WATCH BATTERY | 1.95 |
| OLIVE OIL | | 2.80 | PEANUTTY CONE | K | .70 | ALARM CLOCK(1) | 9.50 |
| SOY SAUCE | | 2.55 | | | | ALARM CLOCK BAT(1) | 11.05 |
| RAISINS | | 1.75 | | | | SUNGLASSES (1) | 4.70 |
| MUSTARD | K | .95 | FRUITS AND VEGETABLES | | | EATING UTENSILS | .25 |
| SPAG. SAUCE | | 1.90 | ** GRAPEFRUIT | | CMP | WHITE HANKIE(5) | .65 |
| SPAGHETTI | | .75 | ** ORANGES | | CMP | HYDROCORT. CREAM | 1.50 |
| | | | ** LEMONS | | CMP | WATCH BAND (1) | 4.30 |
| WHITE RICE | | 1.65 | ** TOMATOES | | CMP | HAIR TIES | 1.05 |
| BROWN RICE | | 1.05 | ** BANANAS | | CMP | ADDRESS BOOK (1) | .65 |
| REFRIED BEANS | | 1.75 | ** GARLIC | | CMP | BALL POINT PEN (2) | 20 |
| VITAMIN C | | 2.10 | ** APPLES | | CMP | CLOTHING | |
| VITAMIN E | | 4.95 | ** PEPPERS | | CMP | WAVE CAP | 1.45 |
| | | | ** ONIONS | | CMP | FLIP-UP SUN GLASS (1) | 6.00 |
| MULTI VITAMINS | | 4.05 | MEDICINE | | | SWEAT TOP (2)S 15.60 | SIZE |
| CALCIUM TABLETS | | 2.75 | ASPIRIN | | 1.30 | SWEAT PANTS (2)15.60 | SIZE |
| | | | ARTIFICIAL TEARS(1) | | 2.15 | SWEAT SHORT (2)10.40 | SIZE |
| VANILLA WAFERS | | 1.75 | HEMORRHOIDAL CR | | 3.45 | T-SHIRT ( 5 ) $11.70 | SIZE |
| MAYONNAISE | K | 2.05 | METAMUCIL | | 5.05 | TUBE SOCKS (3 PACK) | 6.25 |
| HONEY | K | 2.90 | VAPOR RUB | | 1.95 | ATHLETIC SUPPORT | 3.90 |
| BEEF LOG | | 1.55 | NASAL SPRAY | | 2.15 | BOXER SHT M-L-XL ( 7 ) | |
| SAZON SPICE | | 2.55 | COUGH SYRUP (LIMIT) | | 2.15 | BOXER SHT 2X-3XL ( 7 ) | 10.40 |
| CHICKEN SOUP | | .25 | MILK OF MAGNESIA | | 2.05 | BATH ROBE | 42.90 |
| VEGETABLE SOUP | | .25 | COUGH DROPS | | .80 | BASEBALL HATS | 3.60 |
| | | | ADVIL | | .50 | THERMALS/TP/BTM | 9.90 |
| | | | ACNE 10 GEL | | 2.05 | *** WINTER GLOVES | 7.40 |
| GARLIC SALSA | | 1.95 | LACTAID | | 19.50 | MOUTHGUARD | 3.00 |
| | | | | | | WEIGHT GLV XL-XXL | 15.60 |

NO OLD SLIPS
NO ADD ONS!
ALL PRICES SUBJECT
TO CHANGE!!!

YOUR SHOPPING DAY IS
DETERMINED BY THE LAST
TWO DIGITS OF YOUR
FIRST FIVE BOP # DIGITS.
AFTERNOON HRS: 10:30AM-12:30PM
EVENING HRS: 4PM -6PM

SHOPPING DAYS/OPEN HRS

MON.    50-74
TUES.    75-99
WED.    00-24
THUR.    25-49

(20) PACK TOTAL LIMIT FOR - CIGARETTES
*   ITEMS MARKED WITH A NUMBER BESIDE ARE THE LIMITS PERMITTED TO PURCHASE.
* *  INMATE PERSONAL PROPERTY LIMITATIONS ARE THE RESPONSIBILITY OF THE INMATE.
*** THIS ITEM MUST REMAIN AT FCI MCKEAN IF YOU TRANSFER.

Exhibit (H)

page (2.)